In re Cynthia FLORES, Debtor.

Cynthia Flores, Plaintiff,

v.

U.S. Dept. of Education, Defendant.

Nos. 01–3147, 01–31863.

United States Bankruptcy Court, N.D. Ohio.

July 2, 2002.

**850**

Michael P. Dansack, Jr., Toledo, OH, for Plaintiff.

Robert G. Young, Toledo, OH, for Defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

In the instant adversary proceeding, the Plaintiff/Debtor, Cynthia Flores, seeks to discharge certain student loan debts owed to the Defendant, the United States Department of Education. As it pertains to her cause of action, the Debtor argues that her educational debts should be found to be dischargeable in accordance with 11 U.S.C. § 523(a)(8) which provides for the dischargeability of a student loan obligation if "excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents[.]" In the alternative, the Debtor, in the absence of a finding of undue hardship, has asked this Court to invoke its equitable powers under 11 U.S.C. § 105(a) so as to partially discharge her student loan debts.

On the issue of whether she is entitled to have her student loans discharged, both the Debtor and the Defendant filed a Motion for Summary Judgment together with accompanying supporting materials. The Court has now had the opportunity to review these Motions, and is ready to render its decision on the matter. In doing so, the Court will begin by setting forth the relevant facts of this case.

The Debtor is a divorced woman, 35 years of age. From all accounts the Debtor is in good health. Presently, the Debtor, in order to minimize her living expenses, lives with her mother. Also residing in this household is the Debtor's 19 year-old son who attends the University of Toledo.

From 1987 to 1996, the Debtor attended college at two different institutions: Stauz-

enberger College and Lourdes College. In order to finance her education at these institutions, the Debtor took out various student loans totaling Forty-four Thousand One Hundred Eighteen dollars ($44,118.00). However, since graduating from college in 1996 with a degree in psychology, the Debtor has yet to make a single payment on her loan obligations to the Defendant. As it relates to this fact, the evidence produced in this case revealed three things. First, the Debtor has, since her student loans first became due, obtained from the Defendant a forbearance agreement on at least two separate occasions. Second, after her forbearance agreements with the Defendant lapsed, the Debtor, in the year 1999, consolidated her loans in the principal amount of amount Fifty-six Thousand One Hundred Eighty-four and 90/100 dollars ($56,184.90); this amount, however, has subsequently increased to Sixty-three Thousand Eight Hundred Seventeen and 68/100 dollars ($63,817.68) as the result of accruing interest. Finally, in the year 2000, the Debtor was offered a payment schedule on her consolidated loan of Two Hundred Fifty-nine and 23/100 dollars ($259.23) for 291 months with a balloon payment at the end in the amount of Thirty Thousand Eight Hundred Eighty-two and 56/100 dollars ($30,882.56). (Defendant's Exhibit, No. 9).

Presently, the Debtor is employed with Lucas County Children's Services as an Assessment Case Worker. In this position, the Debtor's earns just over Thirty Thousand dollars ($30,000.00) per year, which, after factoring in allowable deductions, amounts to One Thousand Seven Hundred Eighty-five and 98/100 dollars ($1,785.98) per month in take-home pay. In addition to this salary, the Debtor's net take-home pay is presently supplemented by a couple of additional sources. First, the evidence produced in this case revealed that from 1997 to 2000, the Debtor has received federal and state tax refunds ranging in amount from Eight Hundred Eighty-two dollars ($882.00) to Two Thousand Four Hundred Thirty-three dollars ($2,433.00). Second, for approximately the next two years the Debtor will receive One Hundred Seventy-two and 86/100 dollars ($172.86) per month as payment on a child support arrearage. It was also brought to the Court's attention that in the past the Debtor, while working for Lucas County Children's Services, has held down an additional part-time job to supplement her income.

As for her expenses, the Debtor submitted to the Court that the following itemized list constituted her reasonable monthly expenses:

| | |
|---|---|
| Rent | $ 400.00 |
| Utilities | $ 50.00 |
| Telephone | $ 25.00 |
| Food | $ 400.00 |
| Clothing | $ 100.00 |
| Laundry | $ 50.00 |
| Medical/Dental | $ 20.00 |
| Transportation | $ 150.00 |
| Recreation/Clubs | $ 30.00 |
| Auto Insurance | $ 150.00 |
| Car Payment | $ 403.00 |
| Hair Cuts | $ 25.00 |
| Lunches Out | $ 60.00 |
| Total | $1,863.00 |

With regards to the above figures, it was brought to the Court's attention that some of the Debtor's expenses are incurred to provide support for her 19 year old son. It was also brought to the Court's attention that the Debtor's automobile expense of Four Hundred Three dollars ($403.00) was incurred in September of 2001 when the Debtor bought a Ford Taurus for Fourteen Thousand dollars ($14,000.00).

Prior to obtaining her position with Lucas County Children's Services, the facts presented in this case show that the Debtor's employment history was somewhat sporadic, with the Debtor rarely earning more than Ten Thousand dollars ($10,-

000.00) per year. By comparison, the Debtor's present employment with Lucas County Children's Services has been described as stable. (Plaintiff's Memorandum in Support of Cross Motion for Summary Judgment, at pgs. 4–5). Moreover, as it pertains to her employment with Lucas County Children's Services, the evidence produced in this case shows that the Debtor, through a collective bargaining agreement, can expect pay increases over the next few years ranging from two to three percent. (Plaintiff's Answer to Interrogatory No. 29). The Debtor, however, related to the Court that without further education, her prospects for advancement are minimal.

On April 2, 2001, the Debtor filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In her petition for relief, the Debtor listed Seventy-five Thousand Seventy-eight and 04/100 dollars ($75,078.04) in total unsecured debt. Thereafter, the Debtor commenced the instant complaint seeking to have her student loan discharged in accordance with the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8).

## LEGAL ANALYSIS

Under 28 U.S.C. § 157(b)(2)(I), a determination as to the dischargeability of a particular debt is a core proceeding. Thus, this matter is a core proceeding.

The instant cause has been brought before the Court upon the Parties' Cross Motions for Summary Judgment. Federal Rule of Civil Procedure 56(c), which is made applicable to this proceeding by Bankruptcy Rule 7056, sets forth the standard for a summary judgment motion and provides for in part: A party will prevail on a motion for summary judgment when "[t]he pleadings, depositions, answers to interrogatories, and admission on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With respect to this standard, the movant must demonstrate all the elements of his cause of action. *R.E. Cruise Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir. 1975). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In addition, in cases such as this where the Parties have filed Cross Motions for Summary Judgment, the Court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. *French v. Bank One, Lima N.A. (In re Rehab Project, Inc.)*, 238 B.R. 363, 369 (Bankr.N.D.Ohio 1999).

For reasons of public policy, Congress chose to exclude from the scope of a bankruptcy discharge those debts incurred by a debtor to finance a higher education. In enacting this exception to discharge, however, Congress recognized that some student-loan debtors were still deserving of the fresh-start policy provided for by the Bankruptcy Code. As a result, Congress provided that a debtor could be discharged from their educational loans if it were established that excepting the obligations from discharge would impose an "undue hardship" upon the debtor and the debtor's dependents. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine)*, 254 B.R. 191, 196 (Bankr.N.D.Ohio 2000). This exception to nondischargeability is contained in § 523(a)(8) which states:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

As used in § 523(a)(8), however, the term "undue hardship" is not actually defined. As a result, various tests have been developed by the courts to determine whether "undue hardship" exists under any given set of factual circumstances. In this regard, this Court, in accord with those prior decisions rendered by the Sixth Circuit Court of Appeals,[1] has employed what has become to be known as the Brunner Test to determine whether a debtor is entitled to an "undue hardship" discharge of his or her student loan obligations.

■ Under the Brunner Test, which is named after the case *of Brunner v. New York State Higher Educ. Serv. Corp.,* a debtor must establish that the following three elements are in existence in order to have a student loan discharged on the basis of "undue hardship" under § 523(a)(8):

(1) the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). With respect to this Test, it is the Debtor's burden to establish, by a preponderance of the evidence, that each of its elements have been met. *Grine v. Texas Guaranteed Student Loan Corp. (In re Grine),* 254 B.R. 191, 197 (Bankr.N.D.Ohio 2000). For purposes of this case, the Court will begin its analysis with the first prong of the Brunner Test—that is, whether the Debtor would be able to maintain a minimal standard of living if forced to repay her student loan obligation.

■■ The essence of the minimal standard of living requirement of the Brunner Test is that a debtor, after providing for his or her basic needs, may not allocate any of his or her financial resources to the detriment of their student loan creditor(s). *See Rice v. United States (In re Rice),* 78 F.3d 1144, 1149 (6th Cir.1996). Thus, any analysis concerning the first prong of the Brunner Test must necessarily center around two considerations: (1) the debtor's income; and (2) those expenses which are necessary for the debtor to meet his or her basic needs. As it pertains to these considerations, it is the Debtor's position that her disposable income, which amounts to just Ninety-six dollars ($96.00) per month, would over the next 25 years, at 0% interest, pay only Twenty-eight Thousand Eight Hundred dollars ($28,800.00) of the total Sixty-three Thousand Eight Hundred Seventeen and 68/100 dollar ($63,-817.68) student loan obligation. Thus, according to the Debtor, she simply cannot

---

1. These case are, *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman),* 25 F.3d 356 (6th Cir.1994), and *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby),* 144 F.3d 433 (6th Cir.1998).

repay her student loan debt while at the same time ensuring that her basic needs are met. (Plaintiff's Memorandum in Support of Motion for Summary Judgment, at pg. 10).

■■ The Court, however, is not required to accept, at face value, the Debtor's enumerated income and expenses. Instead, this Court is under a duty to scrutinize, and in appropriate circumstances adjust, a debtor's income and expenses so as to ensure that such income and expenses reflect a true picture of the debtor's financial situation. *England v. United States of America (In re England)*, 264 B.R. 38 (Bankr.D.Idaho 2001) (bankruptcy court closely scrutinized a debtor's income to ensure that it met the minimal standard living requirement of the Brunner Test). In this regard, a debtor is expected to use their best efforts to maximize their income within their vocational profile. *Farrish v. U.S. Dep't of Educ (In re Farrish)*, 272 B.R. 456, 462 (Bankr. S.D.Miss.2001). Thus, for example, a debtor is not permitted to become voluntarily underemployed. Of equal importance, a court, although it must be sensitive to the particular circumstances of each case, should ensure that a debtor's expenses are actually necessary. *Elmore v. Massachusetts Higher Education Assistance Corp. (In re Elmore)*, 230 B.R. 22, 27 (Bankr.D.Conn.1999). For this purposes, however, certain parameters exist. On the one side, a court should not expect a debtor to live in abject poverty. *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 438 (6th Cir.1998). On the other hand, the minimal standard of living requirement of the Brunner Test may require that a debtor make some major sacrifices, both personal and financial, with respect to their current style of living. *U.S.A. Group Loan Services v. Shirzadi (In re Shirzadi)*, 269 B.R. 664, 668 (Bankr.S.D.Ind.2001).

■ In considering the above-stated guidelines, the Court is not convinced that all of the Debtor's expenses are actually necessary to meet her basic needs. To begin with, while the Debtor's enumerated expenses are clearly not extravagant, it is apparent that some of her expenses—i.e., food and clothing—are partially the result of expenditures used to support her 19 year-old son. The language of the Bankruptcy Code, however, specifically states that only "dependents" of a debtor may be factored into an "undue hardship" analysis under § 523(a)(8). Thus, while the Debtor may feel a moral obligation to support her son, it will be assumed (and no evidence was introduced to the contrary) that the Debtor's son, being over the age of minority, is emancipated, and therefore does not qualify as a dependent for purposes of § 523(a)(8). *Hoyle v. Pennsylvania Higher Educ. Assistance Agency (In re Hoyle)*, 199 B.R. 518, 521 (Bankr.E.D.Pa.1996) (debtor's 25 and 22 year old children were not dependents for purposes of determining dischargeability of debtor's student loan obligations); *Stebbins–Hopf v. Texas Guaranteed Student Loan Corp. (In re Stebbins–Hopf)*, 176 B.R. 784, 787–788 (Bankr.W.D.Tex.1994) (although debtor felt moral obligation to provide financial assistance to daughter and grandchildren, they were not her dependents).

In addition to those expenses incurred to help support her 19 year-old son, the Court also questions the amount of certain other expenditures set forth by the Debtor. Specifically, the Court does not find it credible that the Debtor could not obtain a reliable form of transportation for under Four Hundred dollars ($400.00) per month. Similarly, the Debtor has offered no reason of necessity as to why she needs to incur an expense of Sixty dollars ($60.00)

per month for eating her lunches out. Thus, for these reasons, the Court finds that for food, clothing, and a car payment the Debtor should be allocated monthly expenses of $300.00, $60.00 and $325.00, respectively. Additionally, the Court shall not permit the Debtor to allocate any expense for eating her lunches out. Accordingly, based upon these revised figures, the Court, instead of One Thousand Eight Hundred Sixty-three dollars ($1,863.00) per month, will permit the Debtor to claim monthly expenses totaling One Thousand Five Hundred Eighty-five dollars ($1,585.00).

■ Turning now to the income side of the equation, the Defendant has asserted that this Court should allocate to the Debtor certain additional sources of income; namely, the income the Debtor receives in child support and the future pay increases that the Debtor will receive from her employment. (Defendant's Memorandum in Support of Motion for Summary Judgment, at pg. 11). The Court, however, after carefully considering the matter, feels that it would not be appropriate to impute to the Debtor that income she receives as child support given that this source of revenue will not likely exist for any significant length of time. Similarly, given that the Debtor's pay increases will not be in a significant amount, and thus will only likely cover inflationary rises in consumer prices, the Court declines to allocate to the Debtor any additional income on this basis. Notwithstanding, the Court does find it proper to impute to the Debtor at least Fifty dollars ($50.00) per month (e.g., $600.00 per year) on account of the fact that the Debtor has in the past, and will likely in the future, receive federal and state tax refunds. As previously pointed out by this Court: a debtor should not be permitted to "conceal otherwise available income by that party simply making an overpayment to the IRS." *Smith v. Shurelds (In re Shurelds)*, 276 B.R. 803, 809 (Bankr.N.D.Ohio 2001). *See also In re Shirzadi*, 269 B.R. at 669 (debtor cannot be said to be maximizing income when too much from debtor's salary is withheld in federal tax). As a result, the Debtor's net monthly income will be set at One Thousand Eight Hundred Thirty-five and 98/100 dollars ($1,835.98), instead of the One Thousand Seven Hundred Eighty-five and 98/100 dollars ($1,785.98) as was asserted.

■ Accordingly, based upon the above revised figures, it is the finding of this Court that the Debtor has at least Two Hundred Fifty dollars ($250.00) per month to devote toward the repayment of her student loan debt. Nevertheless, such an amount is clearly not enough to pay her student loan obligation as according to the Defendant's owns records, a payment of approximately Two Hundred Fifty-nine dollars ($259.00) would still, after 291 payments (24.25 years), leave a balance of well over Thirty Thousand dollars ($30,000.00). Thus, for this reason, the Court finds that the Debtor has sustained her burden under the first prong of the Brunner Test. Similarly, as no evidence was offered which showed that the Debtor would likely receive a significant increase in her salary, or otherwise receive a financial windfall, the Court must find that the Debtor has sustained her burden under the second prong of the Brunner Test which asks whether additional circumstances exist which would indicate that the debtor's state of affairs is likely to persist for a significant portion of the student loan repayment period. The Court thus now turns to address whether the Debtor has met her burden under the third prong of the Brunner Test.

■ As previously set forth, the third prong of the Brunner Test requires that a

debtor establish that he or she has made a good faith effort to repay their student loan obligation. However, as good faith is both an intangible and subjective standard, determining its existence necessarily requires a court to examine a debtor's actions. As one would expect, of primary importance in this regard is whether the debtor actually made payments on their student loan obligations, and if so, in what amount. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999).

In this case, of course, the Debtor has failed to make any payments on her student loan obligation. Notwithstanding, this fact, alone, does not automatically foreclose the existence of good faith under the third prong of the Brunner Test. Instead, in determining the existence of good faith, a court should take into account other considerations. In this respect, this Court has set forth the following list of factors which, although not necessary complete, may be considered in determining whether a debtor acted in good faith:

(1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;

(2) whether the debtor has realistically used all their available financial resources to pay the debt;

(3) whether the debtor is using their best efforts to maximize their financial potential;

(4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

(5) the percentage of the student loan debt in relation to the debtor's total indebtedness.

(6) whether the debtor obtained any tangible benefit(s) from their student loan obligation.

*See Bruen v. United States (In re Bruen)*, 276 B.R. 837 843–44 (Bankr.N.D.Ohio 2001); *Miller v. U.S. Dep't of Educ. (In re Miller)*, 254 B.R. 200, 205 (Bankr.N.D.Ohio 2000); *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999). After considering these factors, however, the Court, especially in light of the fact that the Debtor has not made any payments on her student loan debt, is not persuaded that the Debtor has made a good faith effort to pay her student loan debts. Of particular importance in this regard, is that the fact that the Debtor's education clearly helped her obtain her present job, thereby conferring upon the debtor a very real and tangible benefit from her student loan obligation. Additionally, these two considerations are also noted: (1) the Debtor's student loan obligation constitutes a very large majority of her unsecured debt; and (2) the Debtor, by declining to obtain additional work as she has done in the past, is not necessarily using her best efforts to maximize her income. Accordingly, as the Debtor has, for the foregoing reasons, failed to establish that she acted in good faith toward the repayment of her student loan obligations, no "undue hardship" discharge is warranted in this case.

It is, however, the practice of this Court that a debtor not otherwise entitled to an "undue hardship" discharge under § 523(a)(8) may otherwise be entitled to some relief—i.e., a partial discharge—from their student loan obligations. *See, e.g., Fraley v. U.S. Dept. of Ed. (In re Fraley)*, 247 B.R. 417 (Bankr.N.D.Ohio 2000). The authority for this is found in 11 U.S.C. § 105(a) which provides, in relevant part, that, a bankruptcy "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." In *Tennessee Student Assistance Corp. v. Hornsby (In re Horns-*

*by)*, the Sixth Circuit Court of Appeals specifically approved of this practice when it stated:

> Although the bankruptcy court should not have discharged the ... entire student loans, we believe it had the power to take action short of total discharge. We find this authority in 11 U.S.C. § 105(a), which permits the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," so long as such action is consistent with the Bankruptcy Act. In a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act.

144 F.3d 433, 438–39 (6th Cir.1998) (internal citations omitted).

 Before this Court, however, will invoke its equitable powers under § 105(a), it must find that the equities of the situation tip distinctly in favor of the debtor. *Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 806 (Bankr. N.D.Ohio 2001). A primary concern in this regard is whether the debtor, in seeking relief from the court, has acted in good faith with respect to their student loan(s). *See, e.g., Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162 (Bankr.N.D.Ohio 2002). However, whether a debtor acted in good faith toward their student loan is not the only consideration in determining whether § 105(a) should be applied so as to provide the debtor with some sort of relief from their student loan obligation(s). Instead, a debtor, in the discretion of the court, may be provided with equitable relief when their student loan obligation(s) simply becomes to large to realistically manage. The authority for this position rests upon the specific language of the *In*

*re Hornsby* decision wherein the Sixth Circuit stated that a "bankruptcy court here may fashion a remedy allowing the [debtors] to satisfy their obligations to [the creditor] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." *Id.* at 440. Nonetheless, given the equitable nature of § 105(a), such a situation will only be appropriate if the debtor has acted honestly toward the creditor. *See In re Bruen*, 276 B.R. 837 (Bankr.N.D.Ohio 2001) (debtor who drained all equity from property in order to pay other bills, but not student debt, was not acting honestly toward creditor).

 As applied to the facts of this case, there is simply no doubt, as fully elaborated upon in this Court's analysis of the first prong of the Brunner Test, that the Debtor cannot realistically pay the entire amount of her student loan debt. Moreover, there is absolutely no indication that the Debtor acted dishonestly in her dealings with the Defendant. In particular, it is noted that even though the Debtor did not make any payments on her student loan debts, she kept in contact with the Defendant regarding the repayment of the debts. Notably, the Debtor, in addition to refinancing her loans, obtained forbearance agreements from the Defendant. Similarly, the Debtor did keep in contact with the Defendant regarding other possible repayment options. Thus, given this state of affairs, it is this Court's judgment that the Debtor is entitled to some relief from her student loan debt.

As for the type of relief, the Court, in considering that the Debtor has approximately Two Hundred Fifty dollars ($250.00) per month in excess income after meeting her basic needs, finds that the Debtor should be required to pay at least Two Thousand dollars ($2,000.00) per year

toward her student loan obligation. Further, the Court finds it equitable that the Debtor continually make this yearly payment over a term of 15 years at no interest, thereby establishing the Debtor's nondischargeable student loan debt at Thirty Thousand dollars ($30,000.00). For purposes of this debt, the first of the Debtor's payments shall become due exactly one year after the date this decision is entered, and shall continue to become due on each anniversary thereafter until the obligation is paid in full. The Court, however, given that the Debtor did not sustain her burden under the good faith prong of the Brunner Test, finds it appropriate to subject the Debtor's discharge to this particular caveat: If the Debtor fails to make any of the payments provided for herein, the original amount of her student loan obligation will, including interest that otherwise would have accrued, become a nondischargeable debt.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment submitted by the Plaintiff, Cynthia Flores, be, and is hereby, GRANTED in part and DENIED in part; and that the Motion for Summary Judgment submitted by the Defendant, the United States Department of Education, be, and is hereby, GRANTED in part and DENIED in part.

It is **FURTHER ORDERED** that the student loan obligation of the Plaintiff, Cynthia Flores, to the Defendant, the United States Department of Education, be, and is hereby, determined to be a nondischargeable debt in bankruptcy pursuant to 11 U.S.C. § 523(a)(8).

It is **FURTHER ORDERED** that the Plaintiff's nondischargeable student loan obligation to the Defendant be, and is hereby, determined to be Thirty Thousand dollars ($30,000.00) pursuant to 11 U.S.C. § 105(a). Further, no interest shall accrue on this obligation.

It is **FURTHER ORDERED** that the Defendant provide to the Plaintiff an address as to where payments on the Plaintiff's nondischargeable obligation may be tendered.

It is **FURTHER ORDERED** that the Plaintiff make voluntary payments to the Defendant of at least Two Thousand dollars ($2,000.00) per year. Such payments shall first become due on the first anniversary of the issuance of this Decision, and shall continue to become due on each anniversary thereafter until the obligation is paid in full. Nothing in this Order prevents the Plaintiff from paying her annual obligation earlier and/or in installments as long as the entire amount due is paid on or before the above-specified due date.

It is **FURTHER ORDERED** that if the Plaintiff fails to make any payment, as set forth in the above order, the entire amount of the original student loan obligation, including interest that otherwise would have accrued, will become a Nondischargeable Debt.