**In re Shelly HALL, Debtor.**

**Shelly Hall, Plaintiff,**

v.

**U.S. Dept. of Ed., et al., Defendant.**

**Nos. 01–3235, 01–32781.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 22, 2002.

Jack J. Brady, Toledo, OH, for plaintiff.

Gregory White, United States Attorney, Toledo, OH, for defendant.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

In the instant case, the Plaintiff, Shelly Hall, seeks to have a student loan obligation discharged pursuant to the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8). On this issue, the Parties, with approval from the Court, submitted the matter for decision upon a stipulated set of facts which incorporated the evidence gathered during discovery. In the stipulated set of facts submitted to the Court, the Parties stated that, in addition to the information set forth therein, the matter should be decided based upon the submission of the briefs of the Parties; only the Defendant, however, submitted a brief in support of its respective position. Based upon a review of all of the evidence and supporting materials presented in this case, the Court finds, for the reasons set forth below, that the Plaintiff's student loan obligation is a nondischargeable debt.

 Under § 523(a)(8), generally those debts incurred to finance a higher education are not entitled to be discharged in bankruptcy. Section 523(a)(8), however, provides an exception where the repayment of the loan would impose an "undue hardship" upon the debtor and the debtor's dependents. In addition, the Sixth Circuit Court of Appeals has held that, under appropriate circumstances, a bankruptcy court may, pursuant to 11 U.S.C. § 105(a), partially discharge a student loan debt or provide a student-loan debtor with some other type of equitable relief. *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 440 (6th Cir.1998). As it applies thereto, the following information, which is taken verbatim from the Stipulation of Facts submitted by the Parties, was presented to the Court:

Plaintiff, Shelly Hall, filed a voluntary petition under Chapter 7 on May 2, 2001. This adversary proceeding was initiated by the plaintiff on October 3, 2001 against the United States Department of Education ("DOE") seeking a discharge of certain student loan obligations under the "hardship" provision of 11 U.S.C. § 523(a)(8).

The principal amount currently due on the [student] loan is $38,802.90 through November 18, 2001. The proceeds of the underlying loan were used by plaintiff to pursue her education at the University of Toledo which she attended from 1991 through 1997 and in 2001.

Plaintiff is 29 years old (DOB: 2/27/73), and married Danny Reynolds on February 14, 2002. She has two (2) children: Austin Michael Hall (DOB: 3/12/1995) and Claude Arthur Reynolds (DOB: 11/20/2000). Her husband, Danny Reynolds, is the father of Claude Arthur Reynolds, and Michael Craig is the father of Austin Michael Hall. Both of the aforementioned children live with plaintiff and her husband in Millbury, Ohio. Two (2) of Danny Reynold's children from a prior marriage also reside with them.

Michael Anthony Craig is the subject of a court order administered through the Lucas County Child Support Enforcement Agency, requiring him to pay plaintiff the sum of $119.70 per month for Austin's support plus $86.67 monthly on an arrearage which was $4,432.23 as of August 8, 2001. Between the issuance of the order in 1996 and the date of her deposition on March 26, 2002, plain-

tiff testified that she had received only three (3) payments of approximately $210.00 each in furtherance of the order. From 1990 through 1998 and 2000, plaintiff was a student and worked part time as a waitress and bartender for a number of local restaurants and taverns. In 1999, she worked for Voll Frame & Alignment, Inc. (hereafter "Voll Frame"), . . . as a bookkeeper for $150.00 per week. She returned to Voll Frame in a bookkeeping and clerical capacity in February of 2000.

Voll Frame is an automotive repair business that specializes in repairing frames and doing alignment work. The business is owned by plaintiff's mother-in-law, Nancy Reynolds, and the plaintiff's husband, Danny Reynolds, is the only full time employee engaged in performing automotive repairs. The business has been in existence for 8 to 10 years. Plaintiff earns a gross salary of $350.00 biweekly for part time clerical and bookkeeping duties. Plaintiffs husband also earns a salary of $350.00 biweekly, and the couple lives in a residence in Millbury, Ohio owned by Nancy Reynolds. They are permitted to live in the Millbury residence rent free.

Plaintiff testified that she has no income other than what she earns at Voll Frame, and the fees that she charges the members of her immediate family for the preparation of income tax returns.

Plaintiff and her husband reside together at the Millbury residence and "pool" their respective salaries to pay living expenses. Their combined income is used to support the four (4) children who reside with them, i.e., two (2) of the husband's children from a prior marriage; the husband's child with the plaintiff; and plaintiff's child with Michael Craig. Plaintiff's husband also has two (2) other children who do not reside in the Millbury residence, and for whom he pays support apparently through a wage withholding order. Plaintiff was not certain of the amount of the child support obligation for these two children.

Given her current financial circumstances, plaintiff would not be required to make monthly payments on her student loan obligations if she elected to participate in the Income Contingent Repayment Plan.

Plaintiff has made no payments on her student loan obligations.

Plaintiff has no physical or mental disabilities or conditions which would prevent her from seeking and obtaining a job with a salary and benefits superior to those of her current position with Voll Frame.

Plaintiff has a degree in Administrative Services from the University of Toledo. The curriculum that she completed for the degree consists mainly of general courses in business administration.

Since returning to work at Voll Frame, plaintiff has not applied for any other positions of employment. She testified that her employment with Voll Frame provides her with the flexibility to spend time at home with her children, and that she is able to bring her youngest son to work with her and avoid child care expenses. In addition, plaintiff indicated that Voll Frame doesn't do very well financially, and the business can't afford to hire employees at the market rate in terms of salary. She continues to work in her current position because of the flexible schedule, loyalty to her mother-in-law, and a desire to assist her husband's family. She has no interest at the present time or in the foreseeable future of pursuing a higher paying job because of her perception that she is

needed by her children and in the family business. She is aware of the fact that she would earn more money in another type of employment.

In addition to the above information, it was stipulated that the Debtor and her husband have a combined net monthly income of One Thousand Two Hundred Seventy-one dollars ($1,271.00). In terms of expenses, it was presented to the Court that the Debtor and her husband spend One Thousand One Hundred Seventy-one dollars ($1,171.00) to meet their minimum monthly living requirements. The exhibits presented to the Court also show that the Debtor earns approximately Five Hundred dollars ($500.00) per year doing income tax preparation for other people and that for the tax year 2001, the Debtor received a refund of over One Thousand Six Hundred dollars ($1,600.00). Finally, it is noted that the Debtor, after returning to school in fall of the year 2001, received her degree in Administrative Services in December of that same year. (Plaintiff's Deposition, at pg. 6).

## LEGAL DISCUSSION

The instant complaint involves the dischargeability of a student loan debt under 11 U.S.C. §§ 523(a)(8) and 105(a). Pursuant to 11 U.S.C. § 157(b)(2)(I), this matter is deemed a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

■ The first issue to address is whether the Debtor is entitled to receive an "undue hardship" discharge pursuant to § 523(a)(8) of the Bankruptcy Code which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

In determining whether "undue hardship" exists for purposes of § 523(a)(8), the Sixth Circuit has applied (although it has not actually limited itself to) those factors set forth in what is known as the Brunner Test. *See Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356 (6th Cir.1994); *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998).

■ Under the Brunner Test, which is named after the case of *Brunner v. New York State Higher Educ. Serv. Corp.*, a debtor must establish the existence of each of the following three elements, by a preponderance of the evidence, in order to be entitled to an "undue hardship" discharge under § 523(a)(8):

(1) the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and

(3) the debtor has made good faith efforts to repay the loans.

831 F.2d 395 (2nd Cir.1987). In applying these requirements to the instant case, it is apparent, for the reasons that will now be explained, that even if the Debtor is found to have sustained her burden under the first two prongs of the Brunner Test,

the Debtor has not made a good faith effort to repay her student loan obligation, and thus is not entitled to an "undue hardship" discharge under § 523(a)(8).

▐ In determining whether a debtor has made a good faith effort to repay a student loan obligation, a primary consideration, as one would expect, is whether the debtor actually made any payments on the obligation, and if so, the total amount of payments. *Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999). Nevertheless, a debtor who fails to make payments on a student loan obligation, as is clearly the situation here, is not necessarily altogether foreclosed from a finding of good faith; instead, good faith necessarily encompasses all relevant considerations. *See Green v. Sallie Mae Servicing Corp. (In re Green)*, 238 B.R. 727, 736 (Bankr.N.D.Ohio 1999). Although not necessarily complete, this Court has employed the following list of considerations in determining whether a debtor has made a good faith effort to repay their student loan debt:

(1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;

(2) whether the debtor has realistically used all their available financial resources to pay the debt;

(3) whether the debtor is using their best efforts to maximize their financial potential;

(4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

(5) the percentage of the student loan debt in relation to the debtor's total indebtedness;

(6) whether the debtor obtained any tangible benefit(s) from their student loan obligation.

*Flores v. U.S. Dep't of Educ. (In re Flores)*, 282 B.R. 847, 856 (Bankr.N.D.Ohio 2002).

▐ In looking at the above considerations as they apply to the stipulated set of facts submitted by the Parties, there is simply no indication that the Debtor has even remotely made a good faith effort to repay her student loan obligation. For example, in contravention to the first and third factors set forth above, the Debtor, by her own admission, has failed to pursue additional employment or other possible job opportunities to enhance her earning potential. In this regard, the Debtor admitted that she is not constrained by any physical and/or mental disabilities.

Additionally, and in noncompliance with the sixth factor, the Debtor, having obtained her college degree, clearly received a tangible benefit from her student loan obligation. Moreover, as it relates to the second of the above considerations, it is noted that the Debtor could have devoted at least some of her 2001 income tax return and/or money she earns from doing income tax returns toward the repayment of her student loan obligation. The latter statement is especially true considering that it is likely that the Debtor's ability to do income tax returns was gained, at least in part, from the education she financed.

Finally, and as set forth in the fourth of the above considerations, it is very disconcerting that the Debtor filed both her bankruptcy petition and her complaint to discharge her student loan debt shortly before completing her degree. Indeed, in the absence of very unique and extraordinary circumstances, it would be extremely difficult to make a finding of good faith when a debtor, contemporaneous with attending school, seeks to discharge his or her student loan debts.

Therefore, given the lack of any indicia pointing toward the Debtor making a good

faith effort to repay her student loan obligation, the Court must find that the Debtor has failed to sustain her burden under the third-prong of the Brunner Test. Accordingly, as all prongs of the Brunner Test must be met to establish the existence "undue hardship," the Debtor is not entitled to receive a discharge of her student loan obligation pursuant to 11 U.S.C. § 523(a)(8). The next determination therefore to be made is whether the Debtor is entitled to have an adjustment made on her student loan obligation pursuant to this Court's equitable powers under 11 U.S.C. § 105(a).

■ Section 105(a) permits a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." In *Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, the Sixth Circuit Court of Appeals held that § 105(a) provided a bankruptcy court with the power to equitably adjust a debtor's student loan obligation. 144 F.3d 433, 440 (6th Cir.1998). In the words of the Court, "pursuant to its powers codified in § 105(a), the bankruptcy court here may fashion a remedy allowing the [debtors] ultimately to satisfy their obligations to [the creditor] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." *Id.* The type of relief afforded to a student-loan debtor usually involves providing the debtor with a partial discharge of his or her student loan debts, although the Sixth Circuit held that a bankruptcy court may provide other types of relief such as deferring repayment of the debt. *Id.*

■ Not every debtor, however, is entitled to have an equitable adjustment made on their student loan obligation. Instead, this Court has held that it will only invoke its equitable powers under § 105(a)

if it finds that the equities of the situation tip distinctly in favor of the debtor. *Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 806 (Bankr.N.D.Ohio 2001). A primary concern in this regard is whether the debtor, in accordance with the third-prong of the Brunner Test, made a good faith effort to repay their student loan obligation. *See, e.g., Kirchhofer v. Direct Loans (In re Kirchhofer)*, 278 B.R. 162 (Bankr.N.D.Ohio 2002).

■ In this case, of course, the Court has already found that the Debtor did not, for purposes of third prong of the Brunner Test, make a good faith effort to repay her student loan obligation. Nevertheless, whether a debtor acted in good faith is not the only consideration in determining whether § 105(a) should be applied so as to provide the debtor with some sort of relief from their student loan obligation(s). Instead, a debtor, in the discretion of the court, may be provided with equitable relief when their student loan obligation(s) simply becomes too large to realistically manage. *In re Flores*, 282 B.R. at 857. The authority for this position rests upon the specific language of the *In re Hornsby* decision wherein the Sixth Circuit stated that "where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." 144 F.3d at 439.

■ However, given the equitable nature of § 105(a), the adjustment of a student loan obligation will only be appropriate if the debtor has acted honestly toward the creditor. Simply put, one who seeks equity must do equity. For example, in *Bruen v. United States (In re Bruen)*, this Court completely denied any equitable relief to a debtor who, shortly before filing for bankruptcy, drained all of

the equity from her property in order to pay obligations exclusive of her student loan debt. 276 B.R. 837 (Bankr.N.D.Ohio 2001). In applying this principle to this case, the Court finds a couple of things especially troubling.

First, the timing of events in this case seems highly irregular. Specifically, it is affronting that the Debtor would, while in her final semester of school, file the instant complaint to discharge her student loan debts. In fact, the contemporaneous nature of these events potentially creates a prima facie case for fraud.

The second aspect of this case which this Court finds troubling concerns the Debtor's failure to participate in the Income Contingent Repayment Program.[1] This is because the Income Contingent Repayment program allows debtors to make payments on their educational debt in an amount based upon their current financial situation. Moreover, in situations such as this, where a debtor's disposable income is very minimal, no payments at all are required. Thus, there is no reason why the Debtor should have neglected to participate in the Income Contingent Repayment Program. Stated succinctly, it would naturally follow that, unless she was not acting in a forthright manner, the Debtor would have at least attempted to participate in the Income Contingent Repayment program so as to give her financial situation time to improve. However, just the opposite occurred in this case as the Debtor, even before completing her education, sought to discharge her student loan debt.

Thus, based upon the above analysis, it is clear that the Debtor, in addition to not making a good faith effort to repay her

student loan debt, did not act honestly toward the Defendant. As such, the Debtor is not entitled to have her student loan obligation discharge under either § 523(a)(8) or § 105(a). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the student loan obligation of the Plaintiff/Debtor, Shelly Hall, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT pursuant to 11 U.S.C. § 523(a)(8).

---

1. The Income Contingent Repayment Plan covers a maximum of 300 months. The amount of payments are dependent on the borrower's income and payment may not be required at all during times when the borrower has little income. The balance remaining after the 300–month period is deemed forgiven. *Swinney v. Academic Fin. Serv. (In re Swinney),* 266 B.R. 800, 806 (Bankr.N.D.Ohio 2001).