In re Alan Henry CIESICKI and Mary Louise Ciesicki, Debtors.

Alan Henry Ciesicki, et al., Plaintiffs,

v.

Sallie Mae, et al., Defendants.

Bankruptcy No. 01–43246.
Adversary No. 01–4166.

United States Bankruptcy Court,
N.D. Ohio.

April 17, 2003.

Alan Henry Ciesicki and Mary Louise Ciesicki, Ashtabula, OH, Pro se.

Frederick S. Coombs, III, Youngstown, OH, for Defendant.

Saul Eisen, Cleveland, OH, United States Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

Debtors/Plaintiffs Alan Henry Ciesicki ("Mr. Ciesicki") and Mary Louise Ciesicki ("Mrs. Ciesicki") (collectively "Plaintiffs") filed a petition for relief under Chapter 7 of Title 11, United States Code, on August 1, 2001. Plaintiffs presently seek to have their educational loans owed to Pennsylvania Higher Education Assistance Agency, as assignee and successor in interest to Sallie Mae Servicing, L.P. and the United States Department of Education, ("Defendant") discharged as an "undue hardship" under 11 U.S.C. § 523(a)(8). In the alternative, this Court will also consider whether Plaintiffs are entitled to a partial discharge under 11 U.S.C. § 105(a). A trial was held on this matter on November 7, 2002. Plaintiffs appeared *pro se.* Frederick S. Coombs, III, Esq. appeared on behalf of Defendant. Under 28 U.S.C. § 157(b)(2)(1), a determination of the dischargeability of a particular debt is a core proceeding. The following represents this Court's findings of fact and conclusions of law pursuant to FED R. BANKR. P. 7052.

## DISCUSSION

### I. FACTS

The following facts were adduced at trial and from the depositions, interrogatories

and various financial information submitted by Plaintiffs and Defendant. Between 1995 and 1999, Mrs. Ciesicki attended Kent State University—Ashtabula Campus, and earned a degree in computer technology. While in school Mrs. Ciesicki worked as a lab assistant. In 1999, Mrs. Ciesicki began working as a database designer for Earthlink Technologies and earned Twenty–Eight Thousand Four Hundred Eighty–Eight Dollars ($28,-488.00) in 2000 and Twenty Thousand Three Hundred Seventy–Five Dollars ($20,375.00) in 2001. Between 1997 and 1999, Mr. Ciesicki also attended Kent State University—Ashtabula Campus, taking courses in computer technology. While in school Mr. Ciesicki also worked as a lab assistant. In October 1999, Mr. Ciesicki ceased attending Kent State University and obtained employment as an IT Coordinator at MFG Premier Molding Company in Ashtabula, Ohio. Working as an IT Coordinator, Mr. Ciesicki was able to earn Thirty Thousand Two Hundred Two Dollars ($30,202.00) in 2000 and Thirty–One Thousand Two Hundred Eighty–Nine Dollars ($31,289.00) in 2001. Plaintiffs' combined income was Fifty–Eight Thousand Six Hundred Ninety Dollars ($58,690.00) for 2000 and Fifty–One Thousand Six Hundred Sixty–Four Dollars ($51,664.00) for 2001.

Plaintiffs' economic situation has changed in recent years resulting in their appearance before this Court. On September 30, 2001, Mrs. Ciesicki's position at Earthlink Technologies ended as a result of government cutbacks and decommissioning. Mrs. Ciesicki then began working part time as a secretary at Wynn & Wynn Co., earning approximately Eleven Dollars ($11.00) per hour. Mrs. Ciesicki's net monthly income while working at Wynn & Wynn Co. was estimated to be One Thousand Thirty–Seven Dollars ($1,037.00) per month. Mrs. Ciesicki, however, is currently unemployed. Her services were no longer required after the attorney for whom she was working retired. Since her second job loss, Mrs. Ciesicki has undertaken considerable efforts to secure employment utilizing her training in computer technology by using job placement agencies, referrals and searching advertisements in local newspapers. As of the date of trial, she has been unsuccessful and remains unemployed.

On May 3, 2002, Mr. Ciesicki was involved in an automobile accident in Bazetta, Ohio, while traveling to West Virginia to purchase lottery tickets on behalf of his coworkers. Mr. Ciesicki suffered serious injuries to his neck and knee, and the 1999 Ford Escort he was driving was totaled. While Mr. Ciesicki has been on disability due to his accident, he is still employed by MFG Premier Molding Company in Ashtabula, Ohio. Since the accident he has received disability payments equal to 100% of his wage. Accordingly, Mr. Ciesicki's net income is One Thousand Seven Hundred Eighty–Three Dollars ($1,783.00) per month. Plaintiffs have incurred numerous medical expenses since the accident and have only one automobile at their disposal; thus, confining Mrs. Ciesicki's job search to Ashtabula, Ohio. Under the present circumstances, Plaintiffs' net income each month is One Thousand Seven Hundred Eighty–Three Dollars ($1,783.00), which is being used to support Plaintiffs and their two sons—Tony Ciesicki and A.J. Ciesicki. Tony Ciesicki is 15 years old and A.J. Ciesicki is 18 years old.

Based on the record before this Court, Plaintiffs' monthly expenses are as follows:

| | |
|---|---|
| Rent | $600.00 |
| Local Phone Service | $ 80.00 |
| Long Distance Phone Service | $ 90.00 |
| Water and Sewer | $110.00 |
| Gas and Electricity | $172.00 |

| | |
|---|---|
| Food | $615.00 |
| Clothing | $350.00 |
| Laundry and Dry Cleaning | $ 10.00 |
| Medical Expenses | $160.00 |
| Car Maintenance [1] | $ 40.00 |
| Gasoline | $150.00 |
| Automobile Insurance | $125.00 |
| Health Insurance | $ 25.00 |
| School Lunch (Tony Ciesicki) | $ 60.00 |
| Garbage Service | $ 17.00 |
| Child Support Payments | $200.00 |
| State of Ohio Tax Liability | $ 75.00 |
| Mobile Phone and Pager | $ 90.00 |
| Recreation | $ 40.00 |

In total, Plaintiffs' monthly expenses come to Three Thousand Nine Dollars ($3,009.00). Under present circumstances, Plaintiffs suffer a deficit of One Thousand Two Hundred Twenty–Six Dollars ($1,226.00) per month without taking into consideration educational loan payments.[2]

The outstanding balance of Plaintiffs' educational loans as of November 5, 2002 was Twenty–Seven Thousand Five Hundred Fifty–One and 79/100 Dollars ($27,551.79) and interest is accruing at a rate of 6.375%. On June 19, 2001, Plaintiffs consolidated their educational loans into a single note for Twenty–Six Thousand Eight Hundred Eighteen and 72/100 Dollars ($26,818.72). Prior to consolidation, Plaintiffs did make several payments on their educational loans totaling One Thousand Two Hundred Eighty–Seven and 27/100 Dollars ($1,287.27). From the date of consolidation and August 1, 2001, when Plaintiffs filed for relief under Chapter 7 of the United States Bankruptcy Code, Plaintiffs did not make any payments on this debt. The consolidated note did not raise an obligation to pay until August 17, 2001, 16 days after Plaintiffs filed for relief under Chapter 7.[3]

Plaintiffs have not inquired into the possibility of receiving a hardship forbearance from Defendant and have not inquired into the possibility of making graduated payments or entering into an income contingent repayment plan. Plaintiffs did contact Defendant regarding the possibility of obtaining a deferment and were denied. No one at Defendant raised these possibilities as options available to Plaintiffs when they requested a deferment. Under an income contingent repayment plan, Plaintiffs could enter into a 25–year repayment plan that would take Plaintiffs' yearly income into account. Plaintiffs commenced the instant complaint seeking to have their educational loans discharged in accordance with the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8).

## II. LEGAL ANALYSIS

### A. *Undue Hardship*

■ Section 523(a)(8) provides that an educational debt is not discharged "unless

---

**1.** Expenses for car maintenance, gasoline and automobile insurance are related to Plaintiffs use of A.J. Ciesicki's 1992 Pontiac Sunbird. A.J. Ciesicki purchased this car in Mrs. Ciesicki's name.

**2.** Plaintiffs' petition lists such loan payment to be Four Hundred Fifty Dollars ($450.00) per month.

**3.** Defendant asks this Court to address, as a threshold matter, whether Plaintiffs' educational debt is a post-petition claim since the consolidated note did not raise an obligation to pay until after Plaintiffs filed for bankrupt-

cy. Section 101(5) defines a claim broadly as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, *unmatured,* disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A) (italics added). The immaturity of an obligation does not affect whether a right to payment is a claim. 2 Lawrence P. King, Collier on Bankruptcy, ¶ 101.05[1] (15th ed.2003). Accordingly, the fact that the consolidated note did not raise an obligation to pay until after Plaintiffs filed for relief is immaterial.

excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents[.]" 11 U.S.C. § 523(a)(8). This provision of the Code was enacted "to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436–37 (6th Cir.1998) (citing *Cheesman v. Tenn. Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir.1994)).

■ Since Congress has not defined what constitutes an "undue hardship," courts have devised various tests to determine whether an "undue hardship" exists. *Hornsby*, 144 F.3d at 437. The United States Court of Appeals for the Sixth Circuit has adopted a multifactor approach, beginning with the three-prong analysis announced by the Second Circuit in its *Brunner* case:

> One test requires the debtor to demonstrate "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and (3) that the debtor has made good faith efforts to repay the loans."

*Cheesman*, 25 F.3d at 359 (quoting *Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395, 396 (2nd Cir.1987)). Additional considerations include "the amount of the debt ... as well as the rate at which the interest is accruing" and "the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents." *Hornsby*, 144 F.3d at 437 (quoting *Rice v. United States (In re Rice)*, 78 F.3d 1144, 1149 (6th Cir. 1996)). Before considering the first prong of the *Brunner* test, it should be noted that Plaintiffs bear the burden of demonstrating by a preponderance of the evidence that they qualify for a hardship discharge. *Dolph v. Pa. Higher Educ. Assistance Agency*, 215 B.R. 832, 836 (6th Cir. BAP 1998).

■ The first prong of the *Brunner* test requires Plaintiffs to demonstrate that they cannot maintain a minimal standard of living based on current income and expenses. *Cheesman*, 25 F.3d at 359. The minimal standard of living requirement essentially provides that Plaintiffs cannot allocate any of their financial resources to the detriment of their educational loan creditors after providing for their basic needs. *Flores v. United States Dep't of Educ. (In re Flores)*, 282 B.R. 847, 853 (Bankr.N.D.Ohio 2002). The minimal standard of living requirement does not require Plaintiffs to live in abject poverty before a discharge is warranted, but it does require that Plaintiffs make some lifestyle adjustments in order to maximize income and minimize expenses. *Hornsby*, 144 F.3d at 439. Thus, analysis considering the first prong must necessarily focus on two considerations: (1) Plaintiffs' current income and (2) Plaintiffs' current expenses.

Plaintiffs suffer a monthly deficit of One Thousand Two Hundred Twenty–Six Dollars ($1,226.00) without taking into consideration educational loan payments. Since Mrs. Ciesicki remains unemployed, the One Thousand Seven Hundred Eighty–Three Dollars ($1,783.00) that Mr. Ciesicki receives each month from MFG Premier Molding Company is the only income available to Plaintiffs to satisfy their financial obligations. Based on the record before

this Court, Plaintiffs' monthly expenses come to Three Thousand Nine Dollars ($3,009.00). This figure does not include expenses attributed to Tony Ciesicki because he is 18 years of age and is therefore no longer considered a dependent under § 523(a)(8). *Flores*, 282 B.R. at 854. (While Plaintiffs have a moral obligation to support their son, Plaintiffs' son, being over the age of minority, is emancipated, and therefore does not qualify as a dependent). This figure also represents a departure of One Thousand Five Hundred Ninety–Nine Dollars ($1,599.00) from Plaintiffs' initial estimate of their monthly expenses. At trial it was discovered that several of Plaintiffs' estimates were overstated.

■ While Plaintiffs' 2003 estimated net income does exceed the government's 2003 poverty guideline of Fifteen Thousand Two Hundred Sixty Dollars ($15,-260.00) for a family of three, most of the expenses enumerated above do not appear unreasonable. Plaintiffs do not appear to be living a life of luxury. This Court, however, is not persuaded that it is necessary for Plaintiffs to spend Six Hundred Fifteen Dollars ($615.00) per month on food and Three Hundred Fifty Dollars ($350.00) per month on clothing. This Court is also not persuaded that it is necessary for Plaintiffs to spend Ninety Dollars ($90.00) per month on long distance phone service and Ninety Dollars ($90.00) per month on a mobile phone and pager. However, even after adjusting Plaintiffs' food, clothing and long distance phone service expenses downward to Three Hundred Dollars ($300.00) per month, Two Hundred Twenty–Five Dollars ($225.00) per month and Forty–Five Dollars ($45.00) per month respectively, and after excluding Plaintiffs' expenses related to their mobile phone and pager from consideration, Plaintiffs would still face a monthly deficit of Six Hundred Fifty–One Dollars ($651.00).

■ Defendant contests giving any consideration to the child support in arrearage incurred by Mr. Ciesicki. The Two Hundred Dollar ($200.00) child support expense enumerated above is being garnished from Mr. Ciesicki's pay check. Such an expense clearly diminishes the funds available to Plaintiffs to enjoy a minimal standard of living, and therefore ought to be taken into consideration under the first prong of the *Brunner* test. Furthermore, even if this Court were to exclude the child support payments, Plaintiffs would still be unable to maintain a minimal standard of living based on current income and expenses. Accordingly, after carefully scrutinizing Plaintiffs' reported expenses, this Court finds that Plaintiffs cannot maintain a minimal standard of living based on current income and expenses.

■ The second prong of the *Brunner* test requires Plaintiffs to demonstrate that their current state of affairs is likely to persist for a significant portion of the repayment period. This requirement essentially embodies the underlying concern that prompted the enactment of § 523(a)(8): that recent graduates should not be able to relieve themselves of educational loans on the brink of lucrative careers. *See Cheesman*, 25 F.3d at 359. Thus, to be discharged there should be no evidence that Plaintiffs' financial situation is likely to improve in the foreseeable future. *Id.* at 360 (financial situation unlikely to improve even if both spouses were employed using their degrees); *see Rice*, 78 F.3d at 1150; *Balaski v. Educational Credit Management Corp. (In re Balaski)*, 280 B.R. 395, 399 (Bankr.N.D.Ohio 2002) (debtor suffered from severe physical deformity and other ailments precluding fu-

ture improvement in his financial situation).

This prong of the *Brunner* test is the most difficult to apply because it is impossible to know what the future holds for Plaintiffs. That stated, however, it does not appear that Plaintiffs have satisfied this prong of the test. While a debtor certainly does not have to be physically unable to work in order to satisfy this prong of the *Brunner* test, consideration should be given to the nature of the degree Mrs. Ciesicki obtained. In *Cheesman,* the unemployed spouse's degree was in English and she sought to obtain a position as a teacher's aide. *Cheesman,* 25 F.3d at 358. The employed spouse made considerably less than Mr. Ciesicki working as the director of a local school. The Sixth Circuit Court of Appeals relied on the fact that the debtors' financial position was unlikely to improve even if the unemployed spouse obtained her desired position. *Id.* at 360. This is not the case with Plaintiffs. While Mrs. Ciesicki has been unsuccessful in her search for employment, Plaintiffs' financial position will improve once she becomes employed using her degree in computer technology. Stated differently, it appears likely that Mrs. Ciesicki will eventually find employment utilizing the educational benefits she derives from her educational loans. While Plaintiffs cannot currently maintain a minimal standard of living based on current income and expenses, Plaintiffs were able to make payments on their educational loans when Mrs. Ciesicki was employed. Plaintiffs have failed to prove that Mrs. Ciesicki is unlikely to obtain gainful employment using her degree during a significant portion of the repayment period. Accordingly, the second prong of the *Brunner* test is not satisfied.

██ The third prong of the *Brunner* test requires Plaintiffs to demonstrate that they have made good faith efforts to repay their loans. In determining whether a debtor has acted in good faith regarding the repayment of educational loans, courts consider the following factors:

(1) whether a debtor's failure to repay a student loan obligation is truly from factors beyond the debtor's reasonable control;

(2) whether the debtor has realistically used all their available financial resources to pay the debt;

(3) whether the debtor is using their best efforts to maximize their financial potential;

(4) the length of time after the student loan first becomes due that the debtor seeks to discharge the debt;

(5) the percentage of the student loan debt in relation to the debtor's total indebtedness[;]

(6) whether the debtor obtained any tangible benefit(s) from their student loan obligation.

*Flores,* 282 B.R. at 856; *Bruen v. United States (In re Bruen),* 276 B.R. 837, 843–44 (Bankr.N.D.Ohio 2001).

██ Plaintiffs have clearly obtained a tangible benefit from their student loan obligation as they both have enjoyed employment related to their field of study. Indeed, Mr. Ciesicki is still technically employed as an IT Coordinator at MFG Premier Molding Company. Plaintiffs' student loan obligation also constitutes a fairly significant percentage of their unsecured debt. Defendant also produced some evidence at trial suggesting that Plaintiffs may have failed to pursue adequately a potentially meritorious claim against the other driver involved in Mr. Ciesicki's automobile accident. However, this Court is not convinced that Plaintiffs have failed to use their best efforts to maximize their financial potential. Quite

the contrary, Plaintiffs' inability to repay their educational loan obligation is clearly beyond their control. Mrs. Ciesicki has been aggressively pursuing employment since her prior positions ceased to exist. Plaintiffs did make several payments on their educational loans totaling One Thousand Two Hundred Eighty–Seven and 27/100 Dollars ($1,287.27) prior to falling on difficult times. Nothing in the record evidences an intent on the part of Plaintiffs to defraud Defendant. Accordingly, in considering the totality of the circumstances, this Court is persuaded that Plaintiffs have acted in good faith.

Despite acting in good faith and being unable to maintain a minimal standard of living based on current income and expenses, this Court will not grant a hardship discharge under § 523(a)(8) because Plaintiffs failed to demonstrate that their current state of affairs is likely to persist for a significant portion of the repayment period. However, it is the practice of this Court that a debtor not entitled to relief under § 523(a)(8) may otherwise be entitled to a partial discharge.

### B. *Partial Discharge*

Section 105(a) permits this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" so long as such action is consistent with the Bankruptcy Code and other federal statutes. 11 U.S.C. § 105(a); *Rice*, 78 F.3d at 1151. The Sixth Circuit Court of Appeals has stated that the bankruptcy court may fashion a remedy allowing the debtor in an educational loan discharge case some relief from oppressive financial circumstances pursuant to § 105(a) where an undue hardship does not exist. *Hornsby*, 144 F.3d at 440. Before this Court will invoke its equitable powers under § 105(a), "it must find that the equities of the situation tip distinctly in favor of the debtor." *Flores*,

282 B.R. at 857 (citing *Swinney v. Academic Fin. Serv. (In re Swinney)*, 266 B.R. 800, 806 (Bankr.N.D.Ohio 2001)). A primary consideration in this regard is whether the debtor has acted in good faith and honestly toward the creditor. *Flores*, 282 B.R. at 857. This Court will also consider whether Plaintiffs can realistically pay the entire amount of the debt given their current economic position.

Considering the facts before this Court and the record as a whole, it is clear that Plaintiffs' educational loan should be partially discharged. Plaintiffs are currently unable to pay all of their bills. When both Mr. and Mrs. Ciesicki were employed using training in computer technology, they were able to make some payments on their educational loan. Accordingly, based on the record before the Court, Plaintiffs have acted honestly toward their educational loan creditors. Based on the Court's determination under § 523(a)(8), Plaintiffs have acted in good faith. They did not intend to find themselves in such economic circumstances. Mrs. Ciesicki has been aggressively seeking employment so that she and her family can satisfy their financial obligations. Given their current state of affairs, it is the judgment of this Court that Plaintiffs are entitle to some relief under § 105(a).

### CONCLUSION

Accordingly, this Court orders Defendant to allow Plaintiffs a deferment of one year to give Mrs. Ciesicki time to find gainful employment using her degree in computer technology. Thereafter, this Court further finds it equitable for Plaintiffs to make payments of One Hundred Thirty Dollars ($130.00) per month or One Thousand Five Hundred Sixty Dollars ($1,560.00) per year over a term of fifteen (15) years at no interest. If Plaintiffs can afford to pay Ninety Dollars ($90.00) per

month for mobile services and Forty Dollars ($40.00) per month for recreation, surely they can afford to pay One Hundred Thirty Dollars ($130.00) per month toward their educational loan once Mrs. Ciesicki is employed. Accordingly, Plaintiffs' educational loan obligation is set at Twenty-Three Thousand Four Hundred Dollars ($23,400.00). The balance of Plaintiffs' educational debt in excess of Twenty-Three Thousand Four Hundred Dollars ($23,-400.00) is hereby discharged under § 105(a).

It is ordered that the educational loan obligation of Plaintiffs is hereby discharged to the extent it exceeds Twenty-Three Thousand Four Hundred Dollars ($23,400.00). It is further ordered that Defendant allow Plaintiffs a deferment of one year on their education loan obligation beginning the date this opinion is entered. It is further ordered that no interest shall accrue on Plaintiffs' educational loan obligation of Twenty-Three Thousand Four Hundred Dollars ($23,400.00) to Defendant.

An appropriate order shall enter.

### ORDER

For the reasons set forth in this Court's memorandum opinion entered this date, the discharge of Plaintiffs' student loan debt owed to Defendant is granted in part and overruled in part pursuant to 11 U.S.C. §§ 105(a) and 523(a)(8).

**IT IS SO ORDERED.**