BATCHELDER, Circuit Judge.
The Pennsylvania Higher Education Assistance Agency (“PHEAA”) appeals the judgment of the district court granting partial discharge to student loan debtor Nicole DeMatteis. Because we find the bankruptcy court’s order consistent with this court’s decision in Term. Student Assistance Corp. v. Hornsby, 144 F.3d 433, 437 (6th Cir.1998), we affirm the judgment of the bankruptcy court.
I.
In 1996, Nicole Marie DeMatteis (“De-Matteis”) graduated near the bottom of the class at Case Western Reserve University Law School with substantial student loan debt. DeMatteis failed the July 1996 Ohio bar exam, and has not taken the exam since then.
On August 19, 1999, DeMatteis filed for Chapter 7 bankruptcy. At the time of her filing. DeMatteis’s student loan debt totaled $110,469.38. with PHEAA guaranteeing $83.042.69. The Education Resource Institute (“TERI”) guaranteeing $23,532.50, and Case Western Reserve University (“CWRU”) guaranteeing the last $3,894.19. DeMatteis testified that her monthly student loan payment was approximately $630.00.
In issuing its opinion, the bankruptcy court noted that DeMatteis had taken a job as an office manager in a chiropractic office, for which her take-home pay is approximately $1.034.00 per month. The court also found that the “[pjlaintiff does not suffer from any physical, emotional or mental condition that prevents her from obtaining employment.” DeMatteis is single and has no children, lives at home with her parents, and drives her father’s car to work. After analyzing her budget, the bankruptcy court found that her monthly income exceeds her expenses by at least $200, and also found that some of her expenses “appear higher than we customarily see for a person in her circumstances ____ indicating that] Plaintiff would be able to devote at least some of her income toward repayment of the loans without suffering a substantial decline in her standard of living.”
While finding that the debtor did not demonstrate “undue hardship” under 11 U.S.C. § 523(a)(8), the bankruptcy court nonetheless granted a partial discharge of the student loan debt. In a subsequent order, the bankruptcy court fixed the student loan debt payment amount at $200 per month for 10 years, provided that CWRU should be paid in full, and split the remaining funds on a pro rata basis between PHEAA and TERI, resulting in a partial discharge of $67.360.16 owed to PHEAA, and a partial discharge of $19,109.22 owed to TERI.
On appeal, the Bankruptcy Appellate Panel of the Sixth Circuit (“BAP”) agreed that partial discharge was appropriate, but found that the bankruptcy court should read § 105 as “an overlay” on § 523(a)(8) to reach this outcome. The BAP found the bankruptcy court erred in deviating from the pro rata rule for repayment of the creditors without justification, and remanded for findings to support its holding that a 10-year repayment period is “typical.” Following the BAP’s ruling. PHEAA made timely appeal to this court.
II.
In reviewing bankruptcy cases appealed from district court or the Bankruptcy Ap *8 pellate Panel, this court focuses its review on the bankruptcy court’s decision, analyzing findings of fact for clear error, and conclusions of law de novo. In re Federated Dept. Stores, Inc., 270 F.3d 994, 1000 (6th Cir.2001).
The Bankruptcy Code provides that student loan indebtedness is not dischargeable in Chapter 7 bankruptcy unless the failure to discharge would impose an “undue hardship” on the debtor:
(a) A discharge under ... this title does not discharge an individual debtor from any debt ...
(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in party by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor’s dependents.
11 U.S.C. § 523(a)(8). The term “undue hardship” is not defined in the statute. While this court has not adopted a single test for “undue hardship,” it has frequently looked to the test announced in Brunner v. New York State Higher Educ. Serv. Corp., 831 F.2d 395 (2d Cir.1987). The Brunner test requires the debtor to demonstrate:
(1) that the debtor cannot maintain, based on current income and expenses, a “minimal” standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period ...; and (3) that the debtor has made good faith efforts to repay the loans.
In re Chessman, 25 F.3d 356, 359 (6th Cir.1994) (quoting Brunner, 831 F.2d at 396). In addition to the Brunner factors, this court has looked to objective factors, including “the debtor’s income, earning ability, health, educational background, dependents, age, accumulated wealth, and professional degree.” In re Rice, 78 F.3d 1144, 1150 (6th Cir.1996).
Applying the Brunner test to the facts of this case (that is, a graduate with a monthly surplus essentially attributable to the generosity of her parents), the bankruptcy court found this “a very close case,” but determined that DeMatteis did not meet the bankruptcy code’s requirement of demonstrating the “undue hardship” requisite to permit the discharge of otherwise nondischargeable student loan debt. Nonetheless, the court concluded “that Plaintiff will be unable to pay off her loans entirely, even if she enters into a thirty (30) year repayment plan.” Because the bankruptcy court found that such a result would be “contrary to the purposes and provisions of the bankruptcy code,” the court, relying on what it characterized as “dicta” from this court’s decision in Hornsby, 144 F.3d at 437, opted to provide partial discharge of the debt pursuant to the bankruptcy court’s 11 U.S.C. § 105 equitable powers. The BAP agreed with the partial discharge outcome, but disagreed with the bankruptcy court’s finding that it must resort exclusively to § 105(a) to achieve partial discharge. Rather, relying on Hornsby, the BAP asserted that “[s]ection 105(a) may appropriately be used when the trial court finds that some remedy is appropriate but that full discharge is not called for, an interpretation that allows an overlay of § 105(a) on § 523(a)(8) rather than an independent application of § 105(a).” The court suggests that, while the debtor may not have established undue hardship for total discharge, the facts alleged may nonetheless demonstrate suffi *9 cient undue hardship to grant partial discharge. Accordingly, the BAP suggests that § 523(a)(8) does not create an all-or-nothing discharge provision, at least when read with the “overlay” of § 105(a) equitable powers.
Appellant argues that the bankruptcy court and the BAP erred, because “one cannot read Hornsby as authorizing partial discharge.” According to Appellant, all that Hornsby authorizes is use of equitable powers to structure repayment of nondischarged student loan debt. We disagree. One can read Hornsby as authorizing partial discharge. In Hornsby, this court found that the bankruptcy court had erred in finding that the debtor was entitled to a full discharge based upon “undue burden,” but expressed the opinion that the court had “the power to take action short of total discharge.” 144 F.3d at 438. Relying on § 105(a), the court found that “[i]n a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all- or-nothing treatment thwarts the purpose of the Bankruptcy Act.” Id. at 439. While conceding that the scope of the court’s equitable power in student-loan discharge cases is as yet “undefined,” the court cited with approval the equitable remedies that have been crafted by courts:
[S]ome bankruptcy courts have thus given a debtor the benefit of a “fresh start” by partially discharging loans, whether by discharging an arbitrary amount of the principal, interest accrued, or attorney’s fees; by instituting a repayment schedule; by deferring the debtor’s repayment of the student loans; or by simply acknowledging that a debtor may reopen bankruptcy proceedings to revisit the question of undue hardship.
Id. at 440. Immediately following this list, the court concluded that “pursuant to its powers codified in § 105(a), the bankruptcy court here may fashion a remedy allowing the Hornsbys ultimately to satisfy their obligations to [the lender] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive circumstances.” Id.
Although the Hornsby decision is not perfectly clear on the question of partial discharge, the best reading is that Hornsby does in fact contemplate partial discharge under § 105. While this court’s review focuses, as it must, on the decision of the bankruptcy court, it should be noted that the BAP’s finding that § 523(a)(8) does not require an all-or-nothing approach when read with a § 105 overlay does not find support in Hornsby, which rather relies exclusively on § 105 for the authority to grant partial discharge. Accordingly, based upon this court’s prior binding decision in Hornsby, we reject the overlay theory of the BAP in favor of the independent § 105 equitable grounds theory relied upon by the bankruptcy court. We therefore affirm the judgment of the bankruptcy court regarding the partial discharge.
III.
I write separately in this section to clarify why I believe this circuit has made a serious misstep in traveling down the road begun with Hornsby. Contrary to characterizations made by counsel at oral arguments, DeMatteis’s student loan guarantors are not weasels or feral cats — or even stoats — seeking to prey upon the fledgling DeMatteis, who has been prematurely pushed from her nest. Rather, they are corporations which have chosen to secure DeMatteis’s loan debt on terms which were quite favorable to DeMatteis. The generous terms of the federal loan program are undoubtedly based-at least in *10 parU-on the fact that discharge of student loan debt under the bankruptcy code is only allowed under very narrow circumstances, thereby limiting the number of situations in which a guarantor, or ultimately the taxpayer, will be left to pick up the tab. This policy decision was codified by Congress in 11 U.S.C. § 523(a)(8), which made federally subsidized student loan debt non-dischargeable except in extraordinary circumstances where “excepting such debt from discharge under this paragraph will impose an undue hardship....” 11 U.S.C. § 523(a)(8). The term “debt” here is unitary, and not susceptible to “partial” debt readings. When Congress wanted to permit partial discharge, it made that obvious through such language as “to the extent,” which Congress used elsewhere to modify the term debt. See 11 U.S.C. §§ 523(a)(2), 523(a)(5), and 523(a)(7). Here, the term “debt” is used in the general, § 101(5) sense: as a liability based on a claim, rather than some portion thereof.[1] Because the plain language of § 523(a)(8) governs the dischargeability of student loan indebtedness and does not permit partial discharge, the plain language of § 105 makes clear that the court’s equitable powers cannot include the ability to partially discharge student loan debt. See 11 U.S.C. § 105 (recognizing equitable powers “necessary and appropriate to carry out the provisions of this title”). Where, as here, the' equitable remedy stands in direct conflict with a dictate of the code, such remedy cannot be “appropriate to carry out the provisions of this title.”
That § 105 does not permit equitable remedies which violate the code is in keeping with the common law origins of equity. Equity is not the source of substantive rights and privileges, but rather is a class of remedy. Where, as here, the legislature has expressly specified that there is no right or privilege to a discharge for student loan debt except in cases of undue hardship (and then only for the total debt), the court may not look to a remedy to create such a right or privilege. Put more simply, the remedy here has nothing to which it may attach-there is nothing to remedy.
Yet in Hornsby, this court found that a general theory of equity arising from § 105 is sufficient to overcome the clear and contrary language of § 523(a)(8) and to therefore permit partial discharge. I disagree, as do numerous other courts which have examined this issue. See, e.g., In re Roach, 288 B.R. 437, 447-48 (Bankr.E.D.La.2003) (disagreeing with Hornsby, and finding no “basis either in the language of the Bankruptcy Code, or in the reasoning of these decisions that would allow a partial discharge of a student loan”) (footnote omitted); Illinois Student Assistance Com’n v. Cox, 273 B.R. 719, 723 (N.D.Ga.2002) (rejecting partial discharge theory based in part on the fact that “[u]sing § 105(a) to infuse general equitable powers into the mix, which would permit student loan dischargeability upon a lesser showing, would thus conflict with the specific mandate in § 523(a)(8)”); In re Broum, 249 B.R. 525, 530-31 (Bankr. W.D.Mo.2000) (rejecting the partial discharge theory, and noting the lack of any Eighth Circuit authority supporting such a theory); and In re Hawkins, 187 B.R. 294, 300 (Bankr.N.D.Iowa 1995) (rejecting the partial discharge theory in favor of “an all- or-nothing proposition”); but see In re Saxman, 325 F.3d 1168, 1173 (9th Cir. *11 2003) (agreeing with Hornsby regarding the availability of partial discharge).
The court in Coa; was correct in noting that permitting partial discharge is “tantamount to judicial legislation and is something that should be left to Congress, not the courts.” Cox, 273 B.R. at 723 (quotation omitted). I am nonetheless bound by the decision in Hornsby, which I join the court in applying today. Perhaps the full court will one day wish to examine the Hornsby line of cases, given the conflict between the law of this circuit and the plain language of the bankruptcy code, as well as the disagreement between this circuit and numerous other courts which have interpreted this issue.
IV.
For the foregoing reasons, the judgment of the bankruptcy court regarding the availability of partial discharge is AFFIRMED, and the case is REMANDED to the bankruptcy court for proceedings consistent with this order, and consistent with the remand required by the BAP’s November 30, 2001 order, which applied to issues not appealed to this court.

. 11 U.S.C. § 101(5)(A) defines a claims as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured....”