*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0246P (6th Cir.)
File Name: 04a0246p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: PATRICIA M. MILLER,
　　　　　　　　*Debtor.*

---

PATRICIA M. MILLER,
　　　　*Plaintiff-Appellee,*

*v.*

PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE
AGENCY, STUDENT
SERVICING CENTER,
　　　　*Defendant-Appellant.*

No. 03-5167

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 02-00378—R. Leon Jordan, District Judge.

Submitted: June 9, 2004

Decided and Filed: July 28, 2004

Before: SILER and GIBBONS, Circuit Judges; REEVES,
District Judge.[*]

---

[*]The Honorable Danny C. Reeves, United States District Judge for
the Eastern District of Kentucky, sitting by designation.

---

---

**COUNSEL**

---

**ON BRIEF:** Stephen P. Hale, HUSCH & EPPENBERGER,
Memphis, Tennessee, Holly N. Knight, HUSCH &
EPPENBERGER, Nashville, Tennessee, for Appellant. N.
David Roberts, Jr., BAILEY, ROBERTS & BAILEY,
Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-
appellee Patricia Miller sought full discharge of her student
loan debt by filing an adversary complaint in bankruptcy
court notwithstanding that over ninety-nine percent of her
outstanding student loan obligations remained unpaid. The
bankruptcy court relied on 11 U.S.C. § 105(a) to grant Miller
a partial discharge by dismissing more than half of her student
loan debt. The district court upheld this discharge. The
guarantor of Miller's student loans appealed, arguing that
discharge of student loan debt is only available upon a finding
of "undue hardship" pursuant to the bankruptcy code,
11 U.S.C. § 523(a)(8). For the reasons set forth below, we
reverse the decision of the district court, which affirmed the
order of the bankruptcy court, and remand this case for a
determination of whether Miller has shown undue hardship
with respect to the portion of her student loans that the court
discharged.

## I.

Miller received a Bachelor of Arts degree from Juniata
College in 1988, a Masters of Arts in Philosophy from the
University of Tennessee-Knoxville ("UT") in 1992, and
worked towards a Doctorate of Philosophy at UT from 1992

to 1997. She failed to complete the requirements for the doctoral degree. To pay for her education, Miller received various student loans that are presently guaranteed by the Pennsylvania Higher Education Assistance Agency ("PHEAA"). After leaving UT, she requested and received forbearances and deferments on her student loans.

On May 30, 2001, Miller filed a Chapter 7 bankruptcy petition. Shortly thereafter, she filed an adversary action in the United States Bankruptcy Court for the Eastern District of Tennessee against PHEAA seeking discharge of all of her outstanding student loan debt, which totaled $89,832.16, as of April 26, 2002. At the time that she filed the adversary action, Miller had made payments of only $368.00 towards her student loans, an amount that represented less than half of one percent of her student loan obligations. Miller described her monthly expenses as follows:

rent: $395.00;
utility payments: $75.00;
cable television: $45.00;
telephone charges: $90.00;
cell phone expenses: $40.00;
internet service expenses: $25.00;
food: $275.00;
clothes: $75.00;
laundry: $30.00;
prescriptions, herbs, medical expenses: $65.00;
magazines/books: $15.00;
transportation (not including auto payments or repair work): $110.00;
auto payment with insurance: $250.00;
auto repairs and maintenance: $100.00; and
other expenses: $115.10.

Miller is single and has no dependents. As of 2001, her gross annual income was $26,464.00. In that same year, she received a gift of $3,000.00 from a friend and a $300.00 adjustment from the Internal Revenue Service. At the time of

her adversary action, Miller was employed full-time as an administrative assistant at a construction company and part-time as a call center representative.

The bankruptcy court held a trial on April 30, 2002. The court found that all of Miller's student loan debts were not dischargeable pursuant to 11 U.S.C. § 523(a)(8) because the full amount of the debts did not impose an undue hardship upon her. Notwithstanding this finding, the bankruptcy court granted Miller a partial discharge of her student loan indebtedness. The court decided that Miller's nondischargeable student loan obligation was $34,200.00 and accordingly dismissed the balance of her student loans, an amount of approximately $55,000.00. PHEAA appealed the judgment of the bankruptcy court to the United States District Court for the Eastern District of Tennessee. Miller cross-appealed. The district court adopted the opinion of the bankruptcy court and dismissed the appeals of both parties. PHEAA then filed a timely notice of appeal of the district court's decision.

**II.**

A discharge in Chapter 7 bankruptcy does not discharge an individual debtor's student loan obligations "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). In this case, the bankruptcy court found that Miller had not made a showing of undue hardship. Nevertheless, the court relied on 11 U.S.C. § 105(a), which provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," to grant Miller a partial discharge of her student loan obligations.

PHEAA argues that a showing of undue hardship – as provided by § 523(a)(8) – is the only means by which a court can discharge student loan indebtedness. According to PHEAA, since Miller has not made a showing of undue

hardship, none of her educational loan debt is dischargeable. The central issues of this appeal are, therefore, whether a bankruptcy court can rely on § 105(a) to grant a partial discharge of student loan indebtedness and whether, before a bankruptcy court grants such a discharge, it must first find that the portion being discharged satisfies the "undue hardship" requirement of 11 U.S.C. § 523(a)(8). In reviewing a bankruptcy case appealed from a district court, this court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo. City of White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 999 (6th Cir. 2001).

Although the bankruptcy court found that Miller was not entitled to a complete discharge of her educational loans, the court utilized its § 105(a) powers to partially discharge her student loans. This court has sanctioned such a procedure. *See Hornsby v. Tenn. Student Assistance Corp. (In re Hornsby)*, 144 F.3d 433, 439-40 (6th Cir. 1998). In *Hornsby*, we disagreed with the bankruptcy court's finding that Chapter 7 debtors had shown that repayment of the entire balance of their student loans would impose an undue hardship upon them. *Id*. at 438. While we concluded that the debtors were not entitled to a full discharge of their student loans pursuant to § 523(a)(8), we found that § 105(a) empowered the bankruptcy court "to take action short of total discharge." *Id*. at 438-39. As will be explained below, we view *Hornsby* as authorizing the grant of a partial discharge of a debtor's student loans but only when certain requirements are met.

Our holding in *Hornsby* was that, "pursuant to its powers codified in § 105(a), the bankruptcy court . . . may fashion a remedy allowing the Hornsbys ultimately to satisfy their obligations to [their loan guarantor] while at the same time providing them some of the benefits that bankruptcy brings in the form of relief from oppressive financial circumstances." *Id*. at 440. While the *Hornsby* decision did not direct the bankruptcy court as to what precise remedy should be provided to the debtors in that case, the decision did explain

how bankruptcy courts provide debtors with the "benefit of a fresh start":

> Where a debtor's circumstances do not constitute undue hardship, some bankruptcy courts have thus given a debtor the benefit of a "fresh start" by partially discharging loans, whether by discharging an arbitrary amount of the principal, interest accrued, or attorney's fees; by instituting a repayment schedule; by deferring the debtor's repayment of the student loans; or by simply acknowledging that a debtor may reopen bankruptcy proceedings to revisit the question of undue hardship.

*Id. Hornsby* also explained the need for taking action short of full discharge of a debtor's student loans in this way: "In a student-loan discharge case where undue hardship does not exist, but where facts and circumstances require intervention in the financial burden on the debtor, an all-or-nothing treatment thwarts the purpose of the Bankruptcy Act." *Id*. at 439.

We construe the language of these passages as providing guidance to bankruptcy courts in circumstances where granting a *full* discharge of student loan indebtedness is unwarranted because the debtor cannot show that excepting the entire balance of her student loans from discharge would impose undue hardship but where some form of relief seemed warranted – the precise factual conclusion reached about the Hornsbys. Therefore, when a debtor does not make a showing of undue hardship with respect to the entirety of her student loans, a bankruptcy court may – pursuant to its § 105(a) powers – contemplate granting the various forms of relief discussed in *Hornsby*, including granting a partial discharge of the debtor's student loans. *See DeMatteis v. Case W. Reserve Univ. (In re DeMatteis)*, No. 02-3003, 2004 WL 445167, at *3 (6th Cir. Mar. 8, 2004) ("Although the *Hornsby* decision is not perfectly clear on the question of partial discharge, the best reading is that *Hornsby* does in fact contemplate partial discharge under § 105."). Accordingly,

PHEAA's assertion that a bankruptcy court must rely exclusively on § 523(a)(8) to grant any discharge of student loans in bankruptcy must fail.

While *Hornsby* contemplated the grant of a partial discharge of student loan debt pursuant to § 105(a), our decision did not clearly address whether, in accordance with § 523(a)(8), the debtor must show that the portion of her student loan debt being discharged would impose an undue hardship if that portion was not discharged in bankruptcy. Moreover, the decision did not address precisely when "facts and circumstances" require relief short of full discharge of a debtor's student loans. *Hornsby* acknowledged, however, the correct proposition that a bankruptcy court may only act pursuant to § 105(a) "so long as such action is consistent with the Bankruptcy Act." 144 F.3d at 439. Although § 105(a) permits a bankruptcy court to use its equity powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," "[t]he equitable powers of section 105(a) may only be used in furtherance of the goals of the Code." *Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. P'ship)*, 934 F.2d 723, 725 (6th Cir. 1991). As the Supreme Court has recognized, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Therefore, it cannot be true that *Hornsby* endorsed the idea that, while § 523(a)(8) sets the condition for "[a] discharge" of student loan indebtedness, a bankruptcy court could rely on § 105(a) to evade the plain language of that provision by granting a partial discharge for reasons other than undue hardship.

Furthermore, we point out that, in leading up to its holding, *Hornsby* framed its discussion of how bankruptcy courts grant a partial discharge in these terms:

> Where a debtor's circumstances do not constitute undue hardship as to part of the debt but repayment of the entire

debt would be an undue hardship, some bankruptcy courts have partially discharged student loans even while finding the student loans nondischargeable. *See, e.g., Griffin v. Eduserv (In re Griffin)*, 197 B.R. 144, 147 (Bankr. E.D. Okla. 1996) ("[I]t would be an 'undue hardship' for the Debtors to pay any of the accrued interest and attorneys' fees associated with . . . student loans."); *Bakkum v. Great Lakes Higher Educ. Corp. (In re Bakkum)*, 139 B.R. 680, 684 (Bankr. N.D. Ohio 1992) ("The Court, at its discretion, may excuse any portion of the Debtor's student loan obligation which would create an undue hardship.").

144 F.3d at 440. The limiting condition placed on this discussion – "[w]here a debtor's circumstances do not constitute undue hardship as to part of the debt but repayment of the entire debt would be an undue hardship" – supports the notion that bankruptcy courts discharge the portion of student loan debt for which payment would impose an undue hardship on the debtor. For example, assume that a debtor owes $100,000 in student loans, and repayment of the full amount would impose undue hardship on the debtor but repayment of $40,000 would not. *Hornsby* indicates that a bankruptcy court would discharge $60,000 of the debt, the amount for which repayment would impose an undue hardship.[1] The citations quoted by *Hornsby* also support the conclusion that undue hardship must be shown for the discharged amount. Accordingly, at a minimum, we do not read *Hornsby* as rejecting any interplay between the undue hardship requirement of § 523(a)(8) and the partial discharge of student loans pursuant to § 105(a).

---

[1]In fact, other courts have read *Hornsby* in this fashion. *See Nary v. Complete Source (In re Nary)*, 253 B.R. 752, 767 (N.D. Tex. 2000) ("[This court] therefore adopts the holding of *Hornsby* that § 105(a) authorizes a bankruptcy court to grant a partial discharge where the undue hardship requirement of § 523(a)(8) is met as to part but not all of a student loan.").

We acknowledge that this understanding of *Hornsby* is at odds with the unpublished opinion of this court in *DeMatteis v. Case Western Reserve University*, a decision that we are not bound to follow. *See Bell v. Johnson*, 308 F.3d 594, 611 & n.7 (6th Cir. 2002); *Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 833 (6th Cir. 2000) (both explaining that unpublished decisions are not binding on this court). The court in *DeMatteis* rejected the conclusion of the bankruptcy appellate panel in that case that, in the context of discharging student loans, § 105(a) acts as an "overlay" on § 523(a)(8). 2004 WL 445167, at *2-3. Rather, the *DeMatteis* court reasoned that *Hornsby* should be read as advocating an "independent § 105 equitable grounds theory." *Id*. at *3.

This determination in *DeMatteis* suggests that the grant of a partial discharge of student loan indebtedness pursuant to § 105(a) need not be made upon a showing of undue hardship with regard to the amount discharged. We cannot accept this conclusion. First, we believe that the plain text of the bankruptcy code as well as the language of *Hornsby*, as already discussed, point to a contrary conclusion. Second, besides ignoring that § 523(a)(8) specifically governs discharges of student indebtedness, relying on § 105(a) independently provides no rubric with which bankruptcy courts are able to evaluate whether to grant a partial discharge of student loan indebtedness to a debtor in bankruptcy. Pursuant to the reading of *Hornsby* given in *DeMatteis*, bankruptcy courts may grant a full discharge of student loan debt only when the debtor shows that excepting her entire student loan burden would impose an undue hardship, but a court may grant a partial discharge – including a discharge in excess of fifty percent of outstanding student loan obligations – for whatever reason it views as being encompassed by the court's equitable authority under § 105(a).

In sum, we stress that the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy – regardless of whether a court is discharging a debtor's student loans in full or only partially. The parties

have not cited any authority from our sister circuits that embraces the idea that a partial discharge of student loan debt can be granted without a finding of undue hardship, and indeed we were unable to locate any such case law. In fact, the weight of authority fits squarely with our conclusion. *See Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1175 (9th Cir. 2003) ("We therefore conclude that before the bankruptcy court can partially discharge student debt pursuant to § 105(a), it must first find that the portion being discharged satisfies the requirements under § 523(a)(8)."); *Hemar Ins. Corp. of Am. v. Cox (In re Cox)*, 338 F.3d 1238, 1243 (11th Cir. 2003) (rejecting debtor argument that § 105 allows a bankruptcy court to partially discharge student loans if the undue hardship burden is not met and instead holding that "[t]he bankruptcy court's equitable powers . . . do not allow it to override the specific statutory language found in § 523(a)(8)"); *Educ. Credit Mgmt. Corp. v. Moore*, No. 02-17519, 97 Fed. Appx. 88, 89 (9th Cir. Mar. 15, 2004) (holding that debtor is not entitled to partial discharge of student loans when debtor has not shown undue hardship pursuant to 11 U.S.C. § 523(a)(8)); *Educ. Credit Mgmt. Corp. v. Blair (In re Blair)*, 291 B.R. 514, 520 (B.A.P. 9th Cir. 2003) (finding that bankruptcy court erred in granting partial discharge of student loan debt when debtor had not established undue hardship); *see also Tenn. Student Assistance Corp. v. Mort (In re Mort)*, 272 B.R. 181, 185 (W.D. Va. 2002) (concluding that "[t]he authority to grant the discharge of a student loan debt – whether of the whole debt or only a portion thereof – must be conditioned upon a finding of undue hardship"); *cf. Banks v. Sallie Mae Servicing Corp. (In re Banks)*, 299 F.3d 296, 300 (4th Cir. 2002) ("Allowing the Debtor to pay off loan principal without first permitting the application of the payment to satisfy postpetition interest would reduce the overall amount that the Debtors would have to pay . . . thus allowing the Debtors to accomplish indirectly what they could not accomplish directly under the plain language of §523(a)(8), i.e., a partial discharge of the interest on their student loan debts without a showing of undue hardship.") (alteration in original).

While the undue hardship requirement applies to any discharge of student loan indebtedness, the bankruptcy code itself does not define "undue hardship." As a result, this court has looked to the test enunciated by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), to decide if a debtor has made the requisite showing of undue hardship. *See, e.g., Hornsby*, 144 F.3d at 437-38; *Rice v. United States* (*In re Rice*), 78 F.3d 1144, 1149-50 (6th Cir. 1996). The *Brunner* test requires a three-part showing by the debtor:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
(3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. This court, however, has not formally adopted the *Brunner* test and may look to other factors, including "the amount of the debt . . . [and] the rate at which interest is accruing" as well as "the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents." *Hornsby*, 144 F.3d at 437 (quoting *Rice*, 78 F.3d at 1149) (first alteration in original).[2] In addition, "the debtor's income, earning ability, health, educational background, dependents, age, accumulated wealth, and professional degree" may also be considered. *Rice*, 78 F.3d at 1149. Finally, a court may inquire into "whether the debtor has attempted to maximize his income by

---

[2]As we noted in *Hornsby*, *Rice* concerned the standard governing discharge of Health Education Assistance Loans, but these factors are nonetheless relevant to evaluate the discharge of ordinary student loans. *Hornsby*, 144 F.3d at 437 n.7.

seeking or obtaining stable employment commensurate with his educational background and abilities." *Id*. at 1149-50.

In considering whether to discharge Miller's student loans, the bankruptcy court first analyzed whether Miller had shown by a preponderance of the evidence that she satisfied all three *Brunner* factors. The court found that Miller did not satisfy the second and third factors of the *Brunner* test. According to the bankruptcy court, Miller did not show that her financial situation was more than temporary because she is intelligent and well-spoken, albeit underemployed. The court also concluded that Miller had not satisfied *Brunner*'s good faith prong because in the five years since she had left school, she had contributed only $368.00 towards repayment of her student loans, which totaled almost $90,000, while using such "non-essentials" as personal internet service, long distance telephone service, cell phone service, and cable television.

Despite not meeting the *Brunner* factors for undue hardship, the court relied on its "§ 105(a) powers" to partially discharge her student loans:

The Debtor, for the most part, leads a modest lifestyle. PHEAA's sought-after reduction of the Debtor's phone expenses and the total elimination of her cable and internet services would barely generate a third of the funds necessary to meet even the most basic loan consolidation schedule. Further, earnings from additional hours worked at the Debtor's second job are not a permanent solution to this dilemma. The court will not require the Debtor to work 56 hours per week for the next 25 years in order to repay her student loans. To do so would make her a slave to the loans and would deprive her of any future hope for financial independence. The court also cannot place total reliance on the funds freed up by the discharge of the Debtor's credit card bills. Those funds, while substantial, are partially offset by automobile payments and the

inevitable maintenance and replacement costs associated with an older used car.

Consequently, when determining whether Miller's student loans should be partially discharged, the court did not apply the *Brunner* factors, or any other factors relied upon by this court in making a finding of undue hardship, but rather constructed its own framework for granting a partial discharge.

In so doing, the bankruptcy court impermissibly used its equitable authority. Section 523(a)(8) permits the discharge of student loans only upon a finding that denying such discharge would impose undue hardship on the debtor. 11 U.S.C. § 523(a)(8). Relying on § 105 to discharge student loan indebtedness for reasons other than undue hardship impermissibly contravenes the express language of the bankruptcy code. *See Ray v. City Bank & Trust Co. (In re C-L Cartage Co.)*, 899 F.2d 1490, 1494 (6th Cir. 1990) ("Bankruptcy courts . . . cannot use equitable principles to disregard unambiguous statutory language."). Therefore, because we do not read *Hornsby* as rejecting the idea that the undue hardship requirement of § 523(a)(8) must be satisfied with the grant of a partial discharge, and because we believe that § 523(a)(8) must apply to all discharges of student loan debt, we remand this case so that the bankruptcy court can determine if Miller has shown undue hardship with respect to the portion of her educational loans that were discharged.

### III.

For the foregoing reasons, we reverse the decision of the district court affirming the order of the bankruptcy court and remand this case to the district court with instructions to remand to the bankruptcy court for proceedings consistent with this opinion.