ELECTRONIC CITATION: 2005 FED App. 0003P (6th Cir.)
File Name: 05b0003p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: LISA M. FIELDS, | ) |
| | ) |
| Debtor. | ) |
| ——————————————— | ) |
| | ) |
| LISA M. FIELDS, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 04-8031 |
| | ) |
| SALLIE MAE SERVICING CORP. and | ) |
| EDUCATIONAL CREDIT MANAGEMENT | ) |
| CORP., | ) |
| | ) |
| Defendants-Appellants. | ) |
| ——————————————— | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Western Division at Toledo.
No. 02-31325-7; Adv. No. 02-3140.

Submitted: February 2, 2005

Decided and Filed: April 5, 2005

Before: AUG, COOPER, and LATTA, Bankruptcy Appellate Panel Judges.

———————————

**COUNSEL**

**ON BRIEF:** Daniel N. Sharkey, BUTZEL LONG, Detroit, Michigan, for Appellant.

1

―――――――――――――

**OPINION**

―――――――――――――

JENNIE D. LATTA, Bankruptcy Appellate Panel Judge. Sallie Mae Servicing Corporation and Educational Credit Management Corporation appeal an order of the bankruptcy court declaring a portion of Lisa M. Fields' (the "Debtor") student loan debts dischargeable as an undue hardship pursuant to 11 U.S.C. § 523(a)(8) and § 105(a). For the reasons set forth below, we AFFIRM the order of the bankruptcy court.

## I.  ISSUES ON APPEAL

Whether a bankruptcy court may grant a partial discharge of student loan debt upon a finding that repayment of the entire debt would impose an undue hardship pursuant to 11 U.S.C. § 523(a)(8), but repayment of some portion of the debt would not. If so, what standard should be applied in granting a partial discharge?

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel ("BAP") of the Sixth Circuit has jurisdiction to hear and decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A "final order" of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of an appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). A bankruptcy court's judgment determining dischargeability is a final and appealable order. *Cundiff v. Cundiff (In re Cundiff )*, 227 B.R. 476, 477 (B.A.P. 6th Cir. 1998) (citations omitted).

The appellate court reviews conclusions of law de novo. "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks* (*In re Eubanks*), 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (omitting citations). "Determinations of dischargeability under 11 U.S.C. § 523 are conclusions of law reviewed de novo." *Bailey v. Bailey* (*In re Bailey*), 254 B.R. 901, 903 (B.A.P. 6th Cir. 2000) (citing *Hart v. Molino* (*In re Molino*), 225 B.R. 904, 906 (B.A.P. 6th Cir. 1998)); *see also Sorah v. Sorah* (*In re Sorah*), 163 F.3d 397, 400 (6th Cir. 1998) (holding that "the interpretation of § 523 is a legal issue that we review *de novo*"). But the BAP must "affirm the underlying factual determinations unless they are clearly erroneous." *Nat'l City Bank v. Plechaty* (*In re Plechaty*), 213 B.R. 119, 121

(B.A.P. 6th Cir. 1997). A factual determination is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Bailey*, 254 B.R. at 903 (citations omitted).

## III. FACTS

The Debtor filed a voluntary Chapter 7 bankruptcy petition on March 6, 2002, less than two months after payments on her student loan debt became due. The Debtor initiated an adversary proceeding on May 8, 2002, seeking discharge of student loans totaling $129,801.05, alleging that it would be an undue hardship for her to repay the student loans. A general discharge was granted on July 9, 2002, pursuant to 11 U.S.C. § 727, discharging more than $15,000.00 in unsecured debt other than student loans and discharging approximately $79,000.00 in secured debt.

From 1989 until 2001, the Debtor was enrolled in various educational programs, which she paid for with student loans. She received an Associates Degree in General Studies from Drury College in 1993, a Bachelor of Science Degree in Healthcare Management from Southern Illinois University in 1995, and a Master of Science Degree in Health Promotion from The University of Memphis in 2001.

The bankruptcy court, in a lengthy and detailed memorandum opinion, evaluated the Debtor's personal, educational, and financial situation, and found that the Debtor had failed to show undue hardship pursuant to the *Brunner* test, but that the Debtor had demonstrated that repayment of the full amount of the student loans would be an undue hardship due to "other factors" and thus that a partial discharge of the Debtor's student loan debt was appropriate. The bankruptcy court found that the Debtor could afford to maintain a reasonable standard of living if forced to make at least some payments on the loans and that the Debtor's financial problems were likely to be temporary. The bankruptcy court noted that the Debtor did not make any effort to make payments on the loans before filing for bankruptcy, but concluded that the Debtor had exhibited good faith since she truthfully believed that any available repayment plans for the student loans would be unworkable and since she had maintained both oral and written contact with student loan creditors. The bankruptcy court concluded that the Debtor did not succeed in proving the hardship necessary to except her entire student loan debt from discharge. This conclusion did not end the bankruptcy court's undue hardship analysis, however.

Relying on *Hornsby* and *Cheesman*, the bankruptcy court found that it was required to take the further step of analyzing whether any other circumstances justified an equitable or partial remedy

for the Debtor.  *See Hornsby v. Tenn. Student Assistance Corp.* (*In re Hornsby*), 144 F.3d 433, 435 (6th Cir. 1998); *Cheesman v. Tenn. Student Assistance Corp.* (*In re Cheesman*), 25 F.3d 356 (6th Cir. 1994).  The bankruptcy court interpreted *Cheesman* as authorization from the court of appeals for trial courts to evaluate undue hardship under 11 U.S.C. § 523(a)(8) in light of and in conjunction with 11 U.S.C. § 105(a), and interpreted *Hornsby* as a mandate that trial courts undertake such an analysis.

The bankruptcy court found that the most significant other factor justifying a partial remedy for the Debtor was the substantial amount of the Debtor's student loan debt.  At the time of trial, the Debtor's total student loan debt was $129,801.05.  The bankruptcy court calculated the likely amount of monthly payments that would be required of the Debtor pursuant to a graduated repayment plan (approximately $884.00 per month), and found that repayment of that amount each month would be "unsustainable under the family's current and reasonably predictable future financial circumstances," noting that the Debtor's biweekly pay at the time of trial was $781.46. The bankruptcy court found that the Debtor was maximizing her personal and professional resources, that she was acting in good faith, and that even if she further reduced her expenses she would still be unable to pay her existing student loan debts.  The bankruptcy court noted that since *Hornsby*, bankruptcy courts in the Sixth Circuit have consistently granted partial discharges and developed other remedies in undue hardship cases.  The bankruptcy court went on to find that the Debtor could clearly make some payments but that her ability to repay the entire debt "borders on hopelessness" and found the case appropriate for equitable intervention under § 105.  The bankruptcy court then proceeded to fashion a remedy.

The bankruptcy court sought a remedy which would afford the Debtor a financial fresh start, while holding her accountable for the portion of the cost of her education that she could repay while still maintaining a basic standard of living.  At the time of trial the Debtor was involuntarily paying $338.00 per month through an administrative garnishment.  Based on a close analysis of the family budget and in light of the Debtor's age, education and work experience, the court concluded that the Debtor could afford to pay $338.00 per month for 25 years, the maximum amount of years allowed for payment to be made under the income contingent repayment plans for federally subsidized student loans.  The court noted that by paying $338.00 per month for 25 years, the Debtor would pay nearly the entire amount of the original funds borrowed, without capitalized interest, interest, or fees.  The bankruptcy court apportioned payments pro-rata between the two student loan

creditors. As for interest, the bankruptcy court abated the accrual and capitalization of interest for six years, explaining that in six years the Debtor would likely be making more money and would likely have less expenses for children since one of her children would have reached the age of majority. The bankruptcy court estimated that after six years the amount the Debtor would have to pay per month would increase from $338.00 to $623.60. This abatement of interest for a brief period of time was designed by the bankruptcy court to give the Debtor "breathing room" without providing her a windfall, since the bankruptcy court anticipated that her financial circumstances are more likely to improve than to remain the same or decline.

## IV. DISCUSSION

The nondischargeability of student loan obligations is specified at 11 U.S.C. § 523(a)(8), which provides:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt —

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8).

The broad equitable authority of bankruptcy courts is provided for in 11 U.S.C. § 105(a), which provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

While "undue hardship," the standard for the discharge of student loans, is not a defined term in the Bankruptcy Code, the Court of Appeals for the Sixth Circuit has consistently used, and very recently explicitly adopted, the *Brunner* test for undue hardship. *Oyler v. Educ. Credit Mgmt. Corp.*

*(In re Oyler)*, 397 F. 3d 382 (6th Cir. 2005). The Sixth Circuit has summarized the *Brunner* test as follows:

> The *Brunner* test requires a three-part showing by the debtor:
>
> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Miller v. Pa. Higher Educ. Assistance Agency (In re Miller),* 37 F.3d. 616, 623 (6th Cir. 2004) (citing *Brunner v. N.Y. State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir. 1987)).

Appellants argue that the Debtor failed to establish undue hardship as to any part of her student loans and suggest that a debtor's failure to meet any one of the *Brunner* factors mandates judgment for the student loan creditor and a complete denial of discharge. That is, the Appellants urge the Panel to ignore *Hornsby* and not consider the possibility of partial discharge. The bankruptcy court held that Debtor's student loans were dischargeable to the extent that repayment of the student loans would cause undue hardship for the Debtor. While the bankruptcy court did not find undue hardship sufficient to warrant a discharge of all of the Debtor's student loan debt, it did find that repayment of all of the Debtor's student loan debt would constitute undue hardship. The bankruptcy court discharged only that portion of the debt that it found posed an undue hardship to the Debtor.

*Miller*, which was published after the bankruptcy court's decision, clarified the interplay of §§ 523(a)(8) and 105(a). *Miller* also clarified *Hornsby*, the principal case relied upon by the bankruptcy court in this case, holding that "the requirement of undue hardship must always apply to the discharge of student loans in bankruptcy – regardless of whether a court is discharging a debtor's student loans in full or only partially." *In re Miller*, 37 F.3d at 622.

The facts of *Miller* are similar to those of the present case. The chapter 7 debtor, Patricia Miller ("Miller"), had a B.A., an M.A. in Philosophy, and had spent five years working toward a Doctorate in Philosophy but failed to meet the requirements for obtaining that degree. Miller sought discharge of her student loan debt of $89,832.16. She had made payments of only $368.00 toward her student loan debt. The bankruptcy court in *Miller* discharged $55,000.00 of Miller's student loan debt, despite a finding that the "full amount of the debts did not impose an undue hardship upon

her." *In re Miller,* 37 F.3d at 619. The district court affirmed, but the court of appeals reversed and remanded the case for a determination of whether Miller had shown undue hardship with respect to the portion of her student loans which the bankruptcy court discharged.

The *Miller* court explained that partial discharge should only be granted when "certain requirements are met." *In re Miller*, 37 F.3d at 620. The rule announced in *Miller* is:

> [W]hen a debtor does not make a showing of undue hardship with respect to the entirety of her student loans, a bankruptcy court may – pursuant to its § 105(a) powers – contemplate granting the various forms of relief discussed in *Hornsby*, including granting a partial discharge of the debtor's student loans.

*Id*. Bankruptcy courts may "discharge the portion of student loan debt for which payment would impose an undue hardship on the debtor," emphasizing that the "requirement of undue hardship must always apply to the discharge of student loans in bankruptcy . . . ." *Id.*

*Miller* recognized that "undue hardship" is not a defined term in the Bankruptcy Code and explained that the court has looked to the *Brunner* test for guidance and may also look to "other factors, including 'the amount of the debt . . . [and] the rate at which interest is accruing' as well as 'the debtor's claimed expenses and current standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of himself and his dependents.'" *Id*. (quoting *In re Hornsby*, 144 F.3d at 437 (citing *Rice v. United States* (*In re Rice*), 78 F.3d 1144 (6th Cir. 1996))). While reaffirming the availability of partial discharges of student loans in the Sixth Circuit, the court squarely held that partial discharges of student loans for reasons other than undue hardship are impermissible and are at odds with the "express language of the Bankruptcy Code." *In re Miller*, 37 F.3d at 620. The court remanded the case to the bankruptcy court to determine whether Miller had shown undue hardship with respect to the portion of her student loans that were discharged. *Id*.

In *Oyler*, decided after *Miller*, the Sixth Circuit incorporated into the *Brunner* test the so-called "other factors." *In re Oyler*, 397 F. 3d 382. "Other factors," now part of the *Brunner* test, include a debtor's expenses, standard of living, amount of outstanding debt, and ability to maximize income. *Id.; see also In re Rice,* 78 F.3d at 1149-50 (listing as "other factors" income, earning ability, health, educational background, dependents, age, accumulated wealth, and professional degree.).

Appellants correctly argue that partial discharge of student loans is improper where a debtor has not shown undue hardship as to that portion of student loan debt to be discharged. In this case, however, the debtor has shown undue hardship as to a portion of the student loan debt. The factors that the bankruptcy court relied on, such as the substantial size of the Debtor's student loan debt, the overwhelming interest accruing on the debt, the Debtor's maximization of income, the Debtor's continued contact with creditors, and the Debtor's exploration of other repayment alternatives are no longer just "other factors" to consider, but have been expressly integrated into the *Brunner* test in the Sixth Circuit.

The bankruptcy court carefully analyzed the Debtor's financial circumstances, using the *Brunner* test as it incorporates factors identified in *Miller*, *Hornsby*, and *Rice*. The court then structured a partial discharge of student loan debt to the extent that it constituted an undue hardship for the Debtor. The court took into consideration the amount of the debt, the rate at which interest was accruing, the amount of money the Debtor makes now and is likely to make in the future, the Debtor's good faith in attempting to repay the student loan debts, and the amount of money that the Debtor could pay now and in the future. In a carefully written opinion, the bankruptcy court explained in detail how the amount of student loan debt to be discharged was derived in light of all of these factors. The bankruptcy court addressed the Debtor's inability to maintain a reasonable standard of living if forced to repay the entire debt, describing the substantial size of the student loan debt at issue and the amount of interest rapidly accruing on the debt. In an assessment of "other factors" which fit within the second prong of the *Brunner* test, the bankruptcy court found that circumstances hindering payment will exist for a significant amount of the repayment period. The bankruptcy court sought to require the Debtor to work towards maximization of income by including in its remedy an abatement of interest on her loans for a limited amount of time, six years. The bankruptcy court also found that the Debtor exhibited good faith by maintaining contact with her creditors and exploring alternative debt solutions. The bankruptcy court found that repayment of the entire indebtedness would impose an undue hardship on the Debtor. The court's factual findings are not clearly erroneous. Based upon applicable law, a partial discharge of the Debtor's student loan debt is warranted.

## V. CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is **AFFIRMED**.