NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0252n.06
Filed: April 5, 2007

Case No. 05-3569

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: LISA M. FIELDS, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| -------------------------------------- | ) | ON APPEAL FROM THE |
| | ) | BANKRUPTCY COURT FOR |
| LISA M. FIELDS, | ) | THE NORTHERN DISTRICT |
| | ) | OF OHIO |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SALLIE MAE SERVICES CORP., et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: BATCHELDER, CLAY, and ROGERS, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Defendant-Appellant, Educational Credit Management Corporation ("ECMC"), appeals the order of the Bankruptcy Court, affirmed by the Bankruptcy Appellate Panel ("BAP"), granting discharge of a portion of the student loan debts owed by Plaintiff-Appellee, Lisa Fields ("Fields"). Because we conclude that the bankruptcy court erred in finding that Fields had demonstrated a good faith effort to repay her loans, and erred in holding that Fields was entitled to partial discharge of her student loan debt despite her failure to demonstrate undue hardship, we REVERSE.

I.

Lisa Fields is married, in her mid-30s, and the mother of two children. She is a licensed practical nurse with work experience and supervisory duty in a variety of healthcare facilities, having earned her LPN in 1989 while on active duty in the Army. During the time between 1989 and 2001, Fields earned an Associate's Degree in General Studies from Drury College, a B.S. in Healthcare Management from Southern Illinois University, and an M.S. in Health Promotion from the University of Memphis. Fields paid for these college degrees using student loans from Sallie Mae Service Corporation and ECMC.

On March 6, 2002, less than two months after the first payments on her loan debt became due, Fields filed a voluntary Chapter 7 bankruptcy petition. On May 8, 2002, she initiated an adversary proceeding seeking discharge of her student loan debt, which at that time totaled approximately $121,000, claiming that it would be an undue hardship for her to repay the student loans. On July 9, 2002, while this adversary proceeding was pending, the bankruptcy court granted Fields a general discharge pursuant to 11 U.S.C. § 727, discharging over $15,000 in unsecured debt other than student loans, and approximately $79,000 in secured debt.

In this adversary proceeding, Fields asked the court to discharge her student loan obligations based upon the "undue hardship" exception to nondischargeability in 11 U.S.C. § 523(a)(8). Section 523(a)(8) provides for discharging student loan obligations if "excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents." The Bankruptcy Code does not define "undue hardship," and, following this circuit's precedent at the time, the bankruptcy court looked to the test announced in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2d Cir. 1987), for guidance on this issue. Under *Brunner*, a debtor seeking discharge of student loans due to "undue hardship" must make a three-part showing: (1) that

2

the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans. *In re Tirch*, 409 F.3d 677, 680 (6th Cir. 2005) (citing *Brunner*, 831 F.2d at 396).

The bankruptcy court issued a detailed opinion evaluating Fields' personal, educational, and financial situation, and found that she had failed to satisfy the first two *Brunner* prongs. The court reviewed Fields's current income and expenses, which included Fields's current annual salary of $26,000; her husband's annual salary of approximately $42,000; annual non-taxable child support from Fields's previous husband of some $5,000; and, among other expenses, private elementary school tuition and monthly payments of $420 for the post-petition purchase of a new minivan. Additionally, the court noted that Fields's husband owned the family's home. The court found that Fields had failed to satisfy the requirements of the first prong of the *Brunner* test because "under Ms. Fields' current circumstances, she could still afford to make some voluntary monthly payment on her student loan debts with judicious belt tightening, while at the same time maintaining a basic and reasonable standard of living for herself and her family." Ruling on the second prong, "the court conclude[d], based on Ms. Fields' age, current good health, substantial education, winning personal traits and earning potential, and other evidence presented at trial, that any financial difficulties are temporary and not undue."

Despite finding that Fields failed to satisfy the first two prongs of the *Brunner* test, the bankruptcy court proceeded to the "good faith" prong and found that although the bankruptcy court

was Fields' first stop in seeking debt relief, she had acted in good faith to repay her loans. The court reasoned:

> Facing maternity leave and the impending increase in the size of her family later in 2002, the impact of the substantial payments she would have to make even under alternative repayment programs and other debt relief that she obtained from her bankruptcy filing, the court finds that under the totality of the circumstances Ms. Fields has acted in good faith overall as to repayment of her loans, despite making almost no payments on her loans and instead turning to the bankruptcy court.

Finding that Ms. Fields had satisfied only one prong of the *Brunner* test, the court pursued an equitable or partial remedy, noting that when evaluating undue hardship under 11 U.S.C. § 523(a), the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title" pursuant to 11 U.S.C. § 105(a).

At the time of trial, Fields had paid only $980 on her student loans, and owed $129,801.05 on that debt. The court calculated her monthly payments on the debt to be approximately $884.00, pursuant to a 30-year extended or graduated repayment schedule. Fields's biweekly income at the time of trial was $781.46, and the court considered it "highly unlikely, based on present and reasonably foreseeable circumstances derived from the record, that Ms. Fields will ever be able to repay the total debt she now faces absent court intervention . . . . Ms. Fields has established that it would be an undue hardship and insurmountable burden to repay her student loan debt in full while maintaining a minimal standard of living."

The bankruptcy court also found that at the time of trial, Fields was paying $338.00 per month on the student loan debt through an administrative garnishment. After analyzing Fields' family budget, her work experience, and her education, the court determined that she could afford to pay $338.00 per month for 25 years, the maximum number of years permitted for repayment of

4

federally subsidized student loans under income-contingent repayment plans, which would result in her repaying nearly the full principal amount borrowed, but would not repay capitalized interest, interest, or fees. The bankruptcy court apportioned payments pro-rata between the two student loan creditors, abated the accrual and capitalization of interest for six years, and estimated that after six years Fields' monthly payments would increase to $623.60. This payment schedule, the court said, was designed to give Fields some "breathing room," without providing her a windfall. The court discharged the remaining portion of the student loan debt.

The BAP affirmed the bankruptcy court's conclusion that Fields demonstrated an undue hardship for a portion of her student loans. To reach this conclusion, the BAP relied on two cases that this court decided after the bankruptcy court issued its decision: *In re Miller*, 377 F.3d 616 (6th Cir. 2004), and *In re Oyler*, 397 F.3d 382 (6th Cir. 2005). Applying *Miller* and *Oyler*, and relying in large part on the bankruptcy court's finding that Fields "exhibited good faith by maintaining contact with her creditors and exploring alternative debt solutions," the BAP concluded that Fields satisfied the requirement of a good-faith effort to repay the loan.

**II.**

"We independently review the decision of the bankruptcy court that comes to us by way of appeal from [the BAP]." *In re Maughan*, 340 F.3d 337, 341 (6th Cir. 2003); *see also In re Fordu*, 201 F.3d 693, 696 n.1 (6th Cir. 1999) ("Whether an appeal comes to our court by way of a district court or the BAP, our review is of the bankruptcy court's decision."). "We review the bankruptcy court's conclusions of law *de novo* and its factual determinations for clear error." *In re Palmer*, 219 F.3d 580, 583 (6th Cir. 2000). Whether the repayment of student loans would impose an undue

hardship on the debtor is a question of law that we review *de novo*. *In re Cheesman*, 25 F.3d 356, 359 (6th Cir. 1994).

This circuit has now explicitly adopted the three-part *Brunner* test. *See Oyler*, 397 F.3d at 385. And, although we have approved of the bankruptcy court's use of its equitable powers under § 105 to grant a partial discharge of student loan debt, we have not permitted the court to do so in the absence of a showing of undue hardship at least as to that portion of the debt being discharged. In *Miller*, 377 F.3d at 619, the bankruptcy court had concluded that the debtor had not shown undue hardship, but "[n]evertheless, the court relied on 11 U.S.C. § 105(a) . . . to grant [the debtor] a partial discharge of her student loan obligations." We reversed. First, we said that "when a debtor does not make a showing of undue hardship with respect to the entirety of her student loans, a bankruptcy court may – pursuant to its § 105 powers – contemplate granting . . . a partial discharge of the debtor's student loans." *Id.* at 620. We went on to hold, however, that

> Section 523(a)(8) permits the discharge of student loans only upon a finding that denying such discharge would impose undue hardship on the debtor. Relying on § 105 to discharge student loan indebtedness for reasons other than undue hardship impermissibly contravenes the express language of the bankruptcy code.

*Id*. at 624. We therefore reversed the bankruptcy court's order granting a partial discharge of Miller's student loan indebtedness and remanded the matter "so that the bankruptcy court can determine if Miller has shown undue hardship with respect to the portion of her educational loans that were discharged." *Id*. (emphasis added).

Here, the bankruptcy court granted a partial discharge of Fields's student loan debt solely on the court's finding that Fields had satisfied the third prong of the *Brunner* test, which required Fields to demonstrate that she had made a good faith effort to repay her loans. *See Brunner*, 831 F.2d at

6

396. In evaluating Fields' good faith effort, the bankruptcy court looked "at a multitude of factors in evaluating the debtor's overall circumstances and the reasons why payments have not or arguably cannot be made," and considered the following six factors drawn from *In re Flores*, 282 B.R. 847, 856 (Bankr. N.D. Ohio 2002):

> (1) was the debtor's failure to repay a student loan obligation truly because of factors beyond her reasonable control;
> (2) has the debtor realistically used all available resources to repay the debt;
> (3) is the debtor using her best efforts to maximize her earning potential;
> (4) how long after the loan first became due did the debtor seek to discharge the debt;
> (5) what is the percentage of student loan debt in relation to debtor's total indebtedness; and
> (6) has the debtor obtained any tangible benefit from the student loan obligations.

Upon reviewing the facts, the court stated that it could not "find that Ms. Fields ha[d] realistically used, or at least tried to use her financial resources to at least make some payments on the loans." As the court noted, Fields filed her bankruptcy petition only a month after her post-schooling grace period expired. The court also noted that Fields had not attempted to repay her obligations through the administrative alternatives available under the William D. Ford Federal Direct Loan Program income contingent repayment plan ("ICR"). Fields testified that she explored alternative payment options, but that the result was still too much to sustain on a monthly basis. The court observed that "neither party has submitted an analysis of what Ms. Fields'[s] monthly payment obligations would be under the income contingent repayment plan," but the court nevertheless calculated that "under the maximum of thirty years of repayment for both loans under the extended or graduated repayment plans, . . . the monthly payment [would be] approximately $346 for the loan held by ECMC and as approximately $538 for the DOE loans, or a total of $884 monthly." The court concluded that the alternative repayment schedules were "unworkable under the Fields' family

7

current financial circumstances," and that Fields had demonstrated good faith under *Brunner*. We disagree.

In finding good faith, the bankruptcy court purported to rely on the factors outlined in *Flores*, but we cannot find on this record that a finding of good faith is supported by even four of those six factors. The court had already determined that her failure to make payments was not from factors beyond Fields' control; the first *Flores* factor therefore does not weigh in Fields's favor. Fields did not use all realistically available resources to repay her loans, inasmuch as she had not even applied for ICR relief. The second *Flores* factor does not favor Fields. She sought bankruptcy relief within two months after her first loan payment, making virtually no attempt to repay the loans through which she had received a tangible benefit, so *Flores*' fourth and sixth factors do not work in her favor, either. The bankruptcy court did summarily conclude that because Fields was working in "her chosen area of study," she was maximizing her earning potential, and we think that the third *Flores* factor does weigh in her favor. However, the bankruptcy court explicitly said that the crux of this case is the size of Fields's debt, and the court implicitly held that this factor simply outweighed all of the others. We concede that Fields's student loan debt is great; however, we hold that the *Flores* factors simply do not support a finding that Fields acted in good faith, and we find nothing in *Miller* and *Oyler* – contrary to the BAP's reading of those cases – that compels a different conclusion.

Furthermore, our decision in *Tirch* weighs heavily against Fields and against the bankruptcy court's ruling. We observed in *Tirch* that

> [w]hile not a *per se* indication of a lack of good faith, Tirch's decision not to take advantage of the ICR is probative of her intent to repay her loans. In cases involving a partial discharge of student loans, 'it is a difficult, although not necessarily insurmountable burden for a debtor who is offered, but then declines the

8

> government's income contingent repayment program, to come to this Court and seek an equitable adjustment of their student loan debt.'

*Tirch*, 409 F.3d at 682. We concluded that "[b]ecause Tirch declined to take advantage of an ICR that would have been advantageous, she failed to sustain the heavy burden of proving that she made a good faith effort to repay her loans." *Id*. at 683. Here, Fields has made almost no payments on her loans, turning, almost immediately, to the bankruptcy court instead. Moreover, because Fields declined even to apply for ICR relief, she has failed to sustain the "heavy burden" under *Tirch* of proving that she made a good faith effort to repay her loans.

We agree with the bankruptcy court that Fields wholly failed to satisfy the first two prongs under *Brunner*. Further, however, we hold that the bankruptcy court erred in finding that Fields had demonstrated a good faith effort to repay any portion of her student loans. And finally, because *Brunner* requires the debtor to demonstrate all three prongs in order to support a claim of undue hardship, *see, e.g., Oyler*, 397 F.3d at 385-86 (holding that because Oyler had failed the second prong of the *Brunner* test, he had failed to demonstrate undue hardship under that test), and because we have held that the debtor must prove undue hardship at least as to the portion of the debt discharged, *see Miller*, 377 F.3d at 624, we hold that the bankruptcy court erred in granting equitable relief under § 105(a) and discharging a portion of Fields's debt to ECMC.

For the foregoing reasons, we **REVERSE** the decision of the bankruptcy court granting a partial discharge of Fields's student loan debt owed to ECMC.

9